JAMES M. STONE & others *vs.* CITY OF CHARLESTOWN & another.

GEORGE R. MINOT & others *vs.* INHABITANTS OF WEST ROXBURY & others.

A statute uniting two municipalities, and providing that the act shall not take full effect unless accepted by the voters of the respective municipalities, is not unconstitutional as a delegation of legislative power.

The Legislature, in uniting two municipalities, has the power to provide how their respective properties and debts shall be shared and adjusted ; and such provisions do not impair the obligation of contracts.

As the public property of counties is held for public use, the Legislature, when changing county boundaries, may itself divide among the counties the county property, or may intrust the division to the courts; and in doing so, need not provide for a trial by jury.

By statute one city was united with another, and the right to the uncollected taxes of the first was transferred to the second without express provision for abatements of those taxes. *Held,* that the statute was not for that reason void, as abatements could be made under the general laws of the Commonwealth.

Section 3 of the St. of 1873, *c.* 286, (a statute uniting the cities of Charlestown and Boston,) and section 3 of the St. of 1873, *c.* 314, (a statute uniting the city of Boston and the town of West Roxbury,) make due provision for the determination of petitions to the county commissioners for the assessment of damages from the laying out of roads in Charlestown and in West Roxbury, which were pending when the acts took effect.

The St. 1873, *c.* 286, uniting the cities of Charlestown and Boston, in providing for the election of representatives and senators in the Legislature and of representatives in Congress, and in providing that the duties of the mayor and aldermen and of the city clerk of Charlestown shall devolve upon the board of aldermen and the city clerk of Boston, is not unconstitutional, as it duly secures to the inhabitants of Charlestown the right of election.

The St. 1873, *c.* 286, uniting the cities of Charlestown and Boston, is not void for providing that it shall take effect for different purposes at different times.

The provision of section 15 of the St. 1873, *c.* 286, (a statute uniting the cities of Charlestown and Boston,) which makes it unlawful for the municipal boards of Charlestown to contract debts after the publication by the secretary of the Commonwealth of the certificate declaring the act accepted, is valid.

The provisions of section 12 of the St. 1873, *c.* 286, (a statute uniting the cities of Charlestown and Boston,) which appoint new trustees of the free school fund and of the poor fund and provide that they shall continue to manage the funds according to the terms of the trust, and continue the Mystic Water Board as a separate organization under the direction of the city council of Boston, are valid.

The fact that the meeting of the legal voters of the town of West Roxbury, at which was accepted the St. 1873, *c.* 314, uniting the town with the city of Boston, was presided over by a moderator and not by the selectmen, does not render the acceptance void.

PETITIONS to this court, the first filed under St. 1873, *c.* 286, § 18 ; the second under St. 1873, *c.* 314, § 13.

The first petition was as follows: "Respectfully show your petitioners, being fifty voters of the city of Charlestown in the county of Middlesex in said Commonwealth, as follows:

"1. By chapter two hundred and eighty-six (286) of the acts of the Legislature of this Commonwealth, passed in the year 1873, the said Legislature assumed and undertook to unite the city of Boston in said county of Suffolk, and the said city of Charlestown, in the manner and upon the terms and conditions in said act expressed; to which your petitioners crave leave to refer as fully and freely as if the same were herein at large set forth.

"2. Proceeding under the provisions of said supposed act of the Legislature, a majority of the legal voters of said city of Boston and a majority of the legal voters of said city of Charlestown, on the seventh day of October last, voted to accept the same. As your petitioners are informed, the mayor and aldermen of said city of Charlestown have since certified and returned the ballots cast for and against the acceptance of said act to the secretary of the Commonwealth, and the secretary of the Commonwealth is about to publish his certificate declaring said act to have been duly accepted by the legal voters of the city of Charlestown; and the existing officials of said city are now intending and preparing to do and perform all other acts and things required by said act, to accomplish and perfect the union of said two cities as one municipal corporation under said act.

"3. Your petitioners submit that said act of the Legislature, and all proceedings purporting to be taken thereunder, are without force or validity in law, because:

"First, said act by its terms is to take effect conditionally, and only upon its approval and acceptance by the voters of said cities, and is thus an attempted delegation of legislative powers.

"Second, said act does not provide for and preserve trial by jury in the various controversies respecting property contemplated by and growing out of provisions of said act.

"Third, said act does not provide for the continuance in office of the assessors of taxes of said city of Charlestown, and the several tax-bills of the tax-payers of said city, all bearing date

the first day of October, A. D. 1873, thus deprives them of the benefit of the standing laws relating to the abatement of excessive tax assessments.

" Fourth, said act infringes the rights of creditors of said city of Charlestown, depriving them of the security for their debts originally promised and relied upon, and impairing the obligation of their contracts with the said city.

" Fifth, said act is in conflict with the laws of the United States.

" Sixth, said act is in other particulars unconstitutional and void.

" 4. Wherefore your petitioners pray that notice of this petition may be ordered to all parties in interest; that said act of the Legislature may be declared and adjudged unconstitutional and inoperative ; that any proceeding, election or balloting purporting to have been heretofore had under said act in said city of Charlestown may be held and adjudged to be null and void ; and that the mayor and aldermen of said city of Charlestown, and the treasurer thereof, and all other the officers thereof, may be forever enjoined and restrained from doing or performing any acts or things under and by virtue of said act of the Legislature, or until the further orders of this court ; and that the petitioners may have such other and further relief as the nature of their case may require, and to your honors shall seem meet."

This petition was afterwards amended by adding the following allegations :

" 1. That the assessors of said city of Charlestown having given due notice to the inhabitants and tax-payers thereof to bring in true lists of all their taxable polls and estates, said lists were duly brought in and sworn to by a large number of tax-payers ; and that applications for abatement of taxes by many of the persons filing lists as aforesaid have since been made to said assessors, and are still pending.

" 2. That said city of Charlestown is indebted two million five hundred and thirty-two thousand dollars, funded and water debt and that said county of Middlesex is indebted.

" 3. That several petitions by inhabitants of said city of Charlestown for juries to find the damages to their several estates caused by the laying out of roads, bridges, and for other like causes, have heretofore been made to the county commissioners of Middlesex County, and are now pending, and some of which have been pending for more than a year ; yet no provision is made in said pretended act of annexation for the continuance of said proceedings, or protecting and preserving the rights of the parties interested therein.

" 4. And your petitioners also say, that there are contracts duly executed under a power given by the Legislature, between the city of Somerville and the city of Charlestown and the city of Chelsea, by which water under the control of the Mystic Water Board of the city of Charlestown is to be furnished to the inhabitants of said cities at the same rates, and no other, that the water was furnished to the inhabitants of the city of Charlestown. But if said act of annexation is carried out, said contracts will be rendered wholly nugatory, impossible of execution, and be set at nought, among other things, in this, that in and by said act the Mystic Water Board, at the pleasure of the city council of Boston, is to be merged into the Cochituate Water Board of said Boston, and all advantages accruing to said cities of Chelsea and Somerville, because of the extinction of the small water debt of the city of Charlestown in diminution of said water rates if said city remained a separate municipality, must necessarily and in fact be wholly lost to them."

Order of notice issued to all persons in interest to appear and show cause why the petition should not be granted, and the city of Charlestown and the city of Boston severally appeared and filed separate answers admitting the facts alleged in the petition but denying the conclusions there drawn from them. The cause was heard and reserved for the consideration of the full court, by *Endicott*, J., upon the petition, amended petition and answers.

The second petition was substantially like the first, except that it alleged, as to the meeting of the voters of the town of West Roxbury, that:

" Said meeting was called, notified and warned by a warrant, the first article of which was as follows : ' To choose a modera-- tor to preside at said meeting.' Accordingly, at nine o'clock in the forenoon, or immediately thereafter, all the selectmen of said town being present, the voters then and there assembled, pro- ceeded to the choice of a moderator by ballot, the town clerk being present and presiding at such ballot. As the result thereof, Mr. N. P. Prescott, known to be in favor of the acceptance of the act of annexation, was declared elected as moderator by a vote of forty-seven, against a vote of forty-six for a person known to be opposed to such acceptance. Thereupon the said Prescott proceeded to act as the presiding officer of said meeting, and con- tinued so to act during said meeting, and as well to receive, as- sort, count and declare the votes given at said meeting. At the close of the polls, the said Prescott, acting as the presiding officer of said meeting as aforesaid, declared the aforesaid act of the Leg- islature to have been accepted by a vote of about 713 in favor of such acceptance, to a vote of about 610 against such acceptance, the whole number of legal voters in the town being, as shown by the check list, 1922. As your petitioners are informed, the said selectmen and town clerk, though said selectmen did not preside at said meeting, as before set forth, have since undertaken to make return to the secretary of the Commonwealth of the ballots cast for and against the acceptance of said act of the Legislature, (in accordance with the declaration of said moderator at the close of the polls,) and that the secretary of the Commonwealth on the 15th of October last published his certificate declaring said act to have been duly accepted by the legal voters of the town of West Roxbury and the city of Boston, and the existing officials of said town of West Roxbury, and especially the selectmen and treas- surer thereof, are now intending and preparing to do and perform all other acts and things required by said act, to accomplish and perfect the union of said city and town as one municipal corpora- tion under said act.

" Your petitioners further submit that, if said act of the Legis- lature has any validity in law, no legal or sufficient action thereon has ever been taken by the voters of said town of West Roxbury

that the proceedings purporting to have been had thereunder as hereinbefore alleged were irregular, improper and illegal, as well in other respects as especially in this: that under the provision of said act it was the legal right and duty of the selectmen to preside at such meetings, and as the presiding officers thereof to receive, assort, count and declare the votes cast; that no other person or persons could be substituted in their room; that therefore said meeting was never duly organized, and the pretended balloting thereof was not conducted under the securities and with the safeguards provided by law; and that therefore the voters of said town of West Roxbury have never given any valid or legal vote upon the question of the acceptance of said act."

An amendment similar to the amendment made to the first petition was made to this petition.

An order of notice was issued, and the selectmen of West Roxbury, the county of Norfolk and the city of Boston severally appeared and filed separate answers, and no facts being in dispute, this case was also reserved for the consideration of the full court. The cases were argued together.

*B. F. Butler,* for Stone and others, petitioners, and for the county of Middlesex.

*R. Olney,* for Minot and others, petitioners, and for the county of Norfolk.

*J. L. Stackpole,* (*J. P. Healy* with him,) for the city of Boston.

*J. G. Abbott,* (*W. S. Stearns* with him,) for the city of Charlestown.

*R. M. Morse, Jr.,* for the selectmen and town of West Roxbury.

GRAY, C. J. These petitions are filed under the concluding sections of the Sts. of 1873, *cc.* 286, 314, respectively, annexing the city of Charlestown and the town of West Roxbury to the city of Boston. The petitioners seek to have the election and balloting by which those acts have been accepted by the municipalities immediately affected declared void, for various reasons, many of which apply equally to both petitions, and the two cases may be conveniently disposed of in one opinion.

1. One of the principal objections made to the validity of the proceedings in each case is that the statute in question, being in

terms to take full effect only upon the condition of its approval and acceptance, in the one case by the cities of Boston and Charlestown, and in the other by the city of Boston and the town of West Roxbury, was an attempted delegation of legislative power, and therefore unconstitutional and invalid.

The power to alter the boundaries of the counties, towns and cities, into which the territory of the Commonwealth has been divided for political and municipal purposes, is an inherent attribute of the Legislature, to be exercised according to its own views of public expediency, unless restrained by express constitutional provision.

The Legislature has equal power to change the boundaries of counties, as of cities and towns. *Opinion of Justices*, 6 Cush. 578. The boundaries of counties being arranged rather for the distribution of members of the Legislature, and of the jurisdiction of the courts, than for purposes of local government, the Legislature of Massachusetts has never, we believe, submitted to the vote of the people of a county an act which changed its boundaries, either by dividing a county, or by setting off a town from one county to another, or part of a town from one county to the county containing another part.

In the early years of the Commonwealth, there were no cities, and it was not usual to make any statute dividing a town, or otherwise altering its boundaries, depend upon a vote of all its inhabitants. The power to erect city governments was first conferred upon the Legislature in 1821, by the second article of the amendments of the Constitution, with a proviso that no such government should be erected in any town of less than twelve thousand inhabitants, nor without the consent and application of a majority of the inhabitants of the town. That article does not indeed apply in all its provisions to the annexation of one city or town to another city already established by the Legislature, nor affect the power of the Legislature to change the boundaries of existing towns and cities at its discretion. *Chandler* v. *Boston*, 112 Mass. 200. But since the adoption of that amendment to the Constitution, it has been the usage of the Legislature, acting in accordance with the spirit of the amendment, to submit acts di

viding or uniting towns, or annexing a considerable part of the territory of one town or city to another, to the acceptance of the inhabitants of one or both of the towns or cities whose boundaries are thus altered.

In all such cases, the Legislature gives great weight to the wishes of the inhabitants of the territory to be immediately affected by the change ; and if not satisfied by the petitions and remonstrances addressed to it, or by the reports of its committees, as to what is the deliberate wish of the majority of such inhabitants, it may well, after determining in all other respects upon the measure to be adopted, and framing it into the form of a statute, provide for ascertaining the sense of such inhabitants at meetings held by its authority for the purpose, and declare that the act should take effect if thereupon accepted by a majority of their votes, and not otherwise. In doing so, the Legislature does not in any sense delegate its constitutional authority, but, in the exercise of that authority, determines that, if the inhabitants of that part of the state to be immediately affected by the proposed change assent to it, public policy requires it to be made, and that, without such assent, the other considerations offered in support of it are not sufficient to justify its adoption by the Legislature. The question whether the act should take effect at once, or only upon such acceptance by the inhabitants, is within the discretion of the Legislature to determine.

The act of Congress of 1846, *c.* 35, made the retrocession of the county of Alexandria to the State of Virginia to depend upon the vote of the county, and its constitutionality has never been impugned. 9 U. S. Sts. at Large, 35. *M'Laughlin* v. *Bank of Potomac,* 7 Gratt. 68. *Bull* v. *Read,* 13 Gratt. 78, 92. In *Wales* v. *Belcher,* 3 Pick. 508, it was held by this court that the act establishing the Justices' Court in the county of Suffolk was not unconstitutional because its going into effect was made to depend upon the acceptance of the city charter by the inhabitants of the city of Boston. Amid all the diversity of opinion upon the much vexed question, how far statutes may be made contingent upon being accepted by popular vote without violating the principle that the legislative power cannot be delegated,

there is a complete harmony of adjudication in favor of the authority of the Legislature, unless controlled by a special constitutional provision upon the subject, to submit statutes dividing or uniting counties or towns, or establishing or enlarging a city, to a vote of the inhabitants of the territory immediately affected. *Commonwealth* v. *Quarter Sessions*, 8 Penn. St. 391. *Smith* v. *McCarthy*, 56 Penn. St. 359. *Bank of Chenango* v. *Brown*, 26 N. Y. 467. *Clarke* v. *Rochester*, 28 N. Y. 605, 634. *Paterson* v. *Society for Manufactures*, 4 Zab. 385. *People* v. *Reynolds*, 5 Gilman, 1. *People* v. *Salomon*, 51 Ill. 37. *St. Louis* v. *Russell*, 9 Missouri, 503. *State* v. *Scott*, 17 Missouri, 521. *State* v. *Elwood*, 11 Wis. 17. *Morford* v. *Unger*, 8 Iowa, 82. *Bull* v. *Read*, 13 Gratt. 78. *Manly* v. *Raleigh*, 4 Jones Eq. 370.

The Legislature, having the exclusive power of determining whether such an act shall or shall not be submitted to popular vote at all, may also determine how the vote shall be taken upon any act so submitted, and, when the municipality in question is a city, whether the vote upon its acceptance shall be by the city council, as representing the whole city, or by the inhabitants themselves, and in the latter alternative, whether their votes shall be taken in a general meeting or by wards. The power of the Legislature in this respect is not restricted by any constitutional provision.

The only articles of the Constitution which have been supposed to bear upon this point are two. The one is the nineteenth article of the Declaration of Rights, which affirms the right of the people to assemble to consult upon the common good, to give instructions to their representatives, and to request of the Legislature, by way of addresses, petitions or remonstrances, the redress of wrongs or grievances. That right is reserved to the people of Boston and Charlestown by provisions in the charters of the two cities. Sts. 1821, *c.* 110, § 25 ; 1854, *c.* 448, § 60 · 1847, *c.* 29, § 18. The other is the second article of amendment, which authorizes the Legislature in cities " to prescribe the manner of calling and holding public meetings of the inhabitants, in wards or otherwise, for the election of officers under the Constitution, and the manner of returning the votes given at such meetings."

The meetings to be held under the acts of annexation do not belong to either of the classes mentioned in these articles of the Constitution. They are not held for the purpose of consultation among the inhabitants, of giving instructions to their representatives, or of applying to the Legislature for the redress of wrongs or grievances, nor yet for the election of officers. They are held for the purpose of voting upon the single question of annexation, and thereby declaring the fact upon which the Legislature has determined that the question of annexation shall depend.

2. Counties, towns and cities, being but *quasi* corporations established mainly for political purposes, it is within the power, and has always been the practice, of the Legislature, in changing the boundaries of either, or in annexing one to another, to provide how the property of the former corporations, and the burden of paying their debts, shall be distributed among them. Such transfers of the property or of the debts of such corporations do not affect the obligation of the contracts previously made by either. *Brewster* v. *Harwich*, 4 Mass. 278. *Windham* v. *Portland*, Ib. 384, 390. *Hampshire* v. *Franklin*, 16 Mass. 76, 86. *Whitney* v. *Stow*, 111 Mass. 368. *Bristol* v. *New Chester*, 3 N. H. 524.

The acts now in question declare that nothing in them shall impair the obligation of contracts; and make careful provision to give full effect to this declaration, by enacting that all the public property of the city of Charlestown and of the town of West Roxbury shall be vested in the city of Boston, and that the latter shall become liable for and subject to all the debts, obligations, duties, responsibilities and liabilities of the former, including all actions and causes of actions already pending or accrued; that the interest of Charlestown and of West Roxbury respectively in the public property of the county from which it is set off, being Middlesex in the one case and Norfolk in the other, is released to that county; that the property and the inhabitants of the territory set off shall continue liable to the existing creditors of such county in like manner as if the act had not been passed; with provisions enabling any inhabitant or owner of property in such territory, who is compelled hereafter to pay any part of the debt

of such county, to recover the amount thereof of that county as hereafter to be constituted. Sts. 1873, *c.* 286, §§ 2, 9, 14 ; *c.* 314, §§ 2, 9.

3. The public property of a county does not belong to it in the same absolute sense as the property of an individual belongs to him, but is held by it as a subordinate part of the government, for public uses, and subject to the authority of the Legislature, upon changing the boundaries of the county, to transfer or apportion it to or among the counties as newly constituted, for the same uses. Such apportionment may either be made by the Legislature itself, or may be intrusted by it to the judicial department, to be carried out through the instrumentality of commissioners or otherwise as the Legislature may prescribe; and neither county is entitled as of right to a trial by jury upon the question. *Shirley* v. *Lunenburgh*, 11 Mass. 379. *Salem Turnpike* v. *Essex*, 100 Mass. 282. *Dunmore's Appeal*, 52 Penn. St. 374.

4. The second section of each act provides that the city of Boston shall succeed to all rights to uncollected taxes. It is objected that no provision is made for the hearing of applications for the abatement of taxes heretofore assessed by the assessors of Charlestown and West Roxbury respectively. But we are of opinion that such application may be made, under the general laws of the Commonwealth, to the proper officers having jurisdiction within the territory for the time being, that is to say, to the assessors and the county commissioners of Middlesex and Norfolk until the first day of January next, when the acts of annexation take full effect, and after that day to the assessors and board of aldermen of the city of Boston. Gen. Sts. *c.* 11, §§ 43, 45 ; *c.* 17, § 33.

5. It is further objected that no provision is made for the hearing and determination of pending petitions to the county commissioners for juries to assess the damages occasioned by the laying out of roads in Charlestown and West Roxbury. But this objection is founded upon too limited a construction of the third sections of the respective acts,

Those sections provide that "the several courts within the county of Suffolk," except the municipal courts of the city of Boston, "after this act shall take effect, shall have the same jurisdiction over all causes of action and proceedings in civil causes, and over all matters in probate and insolvency, which shall have accrued within said territory hereby annexed, that said courts now have over like actions, proceedings and matters within the county of Suffolk: provided, however, that the several courts within the county of Middlesex," and within the county of Norfolk, "shall have and retain jurisdiction of all actions, proceedings and matters that shall have been rightfully commenced in said courts prior to the time when this act shall take effect," and shall hear and determine the same as if this act had not been passed.

The Superior Court has exclusive jurisdiction in Boston, and concurrent jurisdiction with the county commissioners elsewhere, of petitions for juries to assess damages for laying out highways. Gen. Sts. *c.* 43, § 79. St. 1873, *c.* 261. Such a petition to the county commissioners is in the nature of a civil action, and has been held to be within the spirit, if not within the letter, of the statutes authorizing courts to allow amendments either in form or substance of any process, pleading or proceeding; and the county commissioners, though elected by the people, and not in the strictest sense judicial officers, yet have the same clerk and the like authority over their records as the Superior Court and this court, and, when exercising jurisdiction over an application for a jury, wield the power formerly exercised by courts of session and of common pleas, and at this day by the Superior Court, and may appropriately be called a court. *Grand Junction Railroad Company* v. *County Commissioners*, 14 Gray, 553, 564. *Andover* v. *County Commissioners*, 5 Gray, 393. *Ellis* v. *County Commissioners*, 2 Gray, 370, 374. *Strong, petitioner*, 20 Pick. 484. Gen. Sts. *c.* 10, § 3; *c.* 121, §§ 6, 13. St. 1869, *c.* 208.

The questions thus far considered apply equally to both cases. We now come to the objections made in argument to the act annexing the city of Charlestown.

6. The most important of these is that the statute is unconsti
tutional, for want of duly securing to the inhabitants of Charles-
town, after the annexation, the right of electing representatives
and senators in the Legislature of the Commonwealth and repre-
sentatives in the Congress of the United States.

But the court is of opinion that this objection cannot be sus-
tained, and that the decision in *Warren* v. *Mayor & Aldermen of
Charlestown,* 2 Gray, 84, upon which the petitioners rely, is inap-
plicable, by reason of the difference in the constitutional and
statutory provisions governing the two cases.

By the Constitution, as it then existed, the right of sending
representatives to the General Court was a corporate right,
vested in towns and cities only, which had the right to determine
how many representatives within the number allowed them they
would send ; and the St. of 1854, *c.* 433, then in question, under-
took to establish a representative district which was neither a
town nor a city, and made no provision by which the inhab-
itants of that district could determine what number of represen-
tatives they would send. But under the twenty-first article of
amendment of the Constitution, the right to send representatives
is not a corporate right of the municipality, nor does the number
of the representatives depend in any degree upon the wish of the
constituents ; but the whole number of representatives is fixed by
the Constitution, and is apportioned by the Legislature to the
several counties, and by the county commissioners, or other board
established by law for the purpose, among representative districts,
not dividing any town or any ward of a city ; and the manner
of calling and conducting the meetings for the choice of repre-
sentatives is to be prescribed by law.

By the Constitution as existing at the time of that decision,
each county was a senatorial district, and all the senators for the
district were elected by the whole county. But by the twenty-
second amendment, the Constitution provides for the division of
counties into single senatorial districts. It is within the power
of the Legislature to change the boundary lines of towns and
counties, provided they do not affect the representative or sena-
torial districts as established by the Constitution. *Opinions of*

*Justices*, 6 Cush. 575, 578. *Wade* v. *Richmond*, 18 Gratt. 583. The provision of the original Constitution, *c.* 1, § 2, requiring the selectmen of the several towns to preside at meetings for the choice of senators, does not apply to meetings in cities, the manner of calling and holding which is left by the second article of amendment to be prescribed by the Legislature.

The act of Congress, apportioning the members of the House of Representatives among the several states, provides that they shall be elected by ballot in districts composed of contiguous territory and containing as nearly as practicable an equal number of inhabitants, but has left the manner of holding the elections to be prescribed in each state by the Legislature thereof. Const. U. S. art. 1, § 4. U. S. St. 1872, *c.* 11. U. S. Rev. Sts. §§ 20–27. The St. of 1854, *c.* 433, differed from that now before us in making no provision for meetings in Charlestown for the election of members of Congress.

The St. of 1873, *c.* 286, § 1, provides that the territory comprised within the limits of Charlestown, until constitutionally and legally changed, " shall continue to be, for the purpose of electing members of the House of Representatives, part of the county of Middlesex, constituting the first, second and third representative districts thereof ; for the purpose of electing a senator, the first Middlesex senatorial district ; for the purpose of electing a councillor, part of council district number six ; and for the purpose of electing a representative in Congress, part of congressional district number five ; as the same are now constituted ; " and that " all the duties, now required by law to be performed by the mayor and aldermen and city clerk of the city of Charlestown, or either of them, pertaining to the election of representatives in Congress, state councillors, senators and members of the House of Representatives, shall in like manner devolve upon and be performed by the board of aldermen and city clerk of the city of Boston."

The existing districts for the purpose of electing representatives and senators in the general court, members of the executive council, and a representative in Congress, being strictly preserved, there is nothing unconstitutional in the provision that the duties

required by law to be performed by municipal officers in regard to such elections shall devolve upon and be performed by the officers of the city, of which the territory in question is for all other purposes made part.

7. The statute is not invalidated by the provisions as to the times when it shall take effect for various purposes. The substance of those provisions is, that for the purpose of calling and holding meetings for voting upon the acceptance of the act, it shall take effect upon its passage; that such meetings shall be held on the first Tuesday of October, 1873, and the result thereof returned as soon as may be by the municipal officers to the secretary of the Commonwealth; that if so accepted, the fact shall be certified and published by the secretary, and the inhabitants of Charlestown, on the second Tuesday of December, shall take part in the election of officers in the city government of Boston, which is to be organized on the first Monday of January, 1874; and that the statute shall take full effect upon this last day. St. 1873, *c.* 286, §§ 5–7, 15–17. This case does not require us to consider the effect of § 18, providing for further proceedings in case the acceptance of the act should be declared void.

8. After the acceptance of the act has been officially certified and published, the municipal boards of Charlestown are prohibited to contract or pay any new debts without the approval of the mayor and the board of aldermen of Boston. St. 1873, *c.* 286, § 15. The statute does put it within the power of the city government of Boston, even before the first Monday in January, when the annexation will be complete, and the inhabitants of Charlestown be represented in the government of Boston, to contract debts which will bind all the inhabitants of Boston, including Charlestown, after that time. But there is nothing in all this which exceeds the constitutional authority of the Legislature.

9. The other objections urged against the validity of the Charlestown Annexation Act have already been substantially disposed of.

The power of the Legislature to unite the two cities is not affected by the existing charitable trusts for the schools and the poor of Charlestown under the Sts. of 1792, *c.* 83, and 1825, *c*

40 ; and the provisions of § 12 for a continuance of those trusts, and the appointment of new trustees, are valid. *Girard* v. *Philadelphia*, 7 Wall. 1. *Philadelphia* v. *Fox*, 64 Penn. St. 169. *Montpelier* v. *East Montpelier*, 27 Vt. 704, and 29 Vt. 12.

10. Nor is the constitutionality of the act affected by the provisions of § 12 as to the Mystic Water Board of Charlestown, it being expressly declared that all contracts made and liabilities incurred by that board shall be assumed by the city of Boston. The transfer of property from one municipal corporation to another does not impair the obligation of those contracts.

11. The remaining objection is peculiar to the case of West Roxbury, and is, that the town meeting at which the act of annexation was accepted was presided over by a moderator, and not by the selectmen of the town. But we are of opinion that there is nothing, either in the general laws of the Commonwealth or in the special provisions of the act of annexation, which requires the selectmen to preside at the meeting.

By the Gen. Sts. *c.* 7, § 8, " at town meetings for the election of national, state, district and county officers, the selectmen shall preside, and shall have all the powers which are vested in moderators." At meetings for the choice of town officers, or for any other purpose, a moderator is required to be chosen. Gen. Sts. *c.* 18, §§ 25, 32. And by § 26, " during the election of a moderator, the town clerk, if present, shall preside ; if he is absent or there is no town clerk, the selectmen shall preside ; and the town clerk and selectmen respectively shall, in such case, have the powers and perform the duties of a moderator." This was not a meeting for the election of national, state, district or county officers, and therefore, so far as it is governed by the General Statutes, a moderator should be chosen, and the town clerk and selectmen could preside only when there was no moderator.

The St. of 1873, *c.* 314, § 10, provides that the meetings shall be called, notified and warned by the selectmen in the same manner as meetings for the election of town officers, and that the selectmen and town clerk shall make return of the ballots to the secretary of the Commonwealth. But it does not provide that the selectmen shall preside at the meeting. The provision that,

in case of the absence of the selectmen or of the town clerk, a like officer may be chosen and qualified, who shall have all the powers and duties of the regular officer at the meeting, would doubtless allow the selectmen or town clerk, or the substitute so chosen, to preside, if no moderator was elected. But there is nothing in the statute to prevent the inhabitants from electing a moderator to preside at the meeting, if they see fit so to do.

The result of the whole matter is, that none of the objections suggested to the validity of either statute, or of the proceedings under it, can be sustained, and that each

*Petition must be dismissed.*