# SUPPLEMENT.

## OPINIONS OF THE JUSTICES TO THE HOUSE OF REPRESENTATIVES.

By FIELD, C. J., ALLEN, MORTON, & LATHROP, JJ.  It is unconstitutional to provide, in an act granting to women the right to vote in town and city elections, (1) that it shall take effect throughout the Commonwealth upon its acceptance by a majority vote of the voters of the whole Commonwealth; (2) or that it shall take effect in a city or town upon its acceptance by a majority vote of the voters of such city or town; (3) or that it shall take effect throughout the Commonwealth upon its acceptance by a majority vote of the voters of the whole Commonwealth, including women specially authorized to register and to vote on this question alone.

By HOLMES & BARKER, JJ.  Such an act would be constitutional.

By KNOWLTON, J.  An act containing the second provision would be constitutional, but one containing the first or third provision would be unconstitutional.

THE following order was adopted by the House of Representatives on February 2, 1894, and thereupon transmitted to the Justices of the Supreme Judicial Court, who, on February 28, 1894, returned the opinions which are subjoined.

Ordered, That the Justices of the Supreme Judicial Court be required to give their opinion to the House of Representatives upon the following important questions of law: —

1. Is it constitutional, in an act granting to women the right to vote in town and city elections, to provide that such act shall take effect throughout the Commonwealth upon its acceptance by a majority vote of the voters of the whole Commonwealth?

2. Is it constitutional to provide in such an act that it shall take effect in a city or town upon its acceptance by a majority vote of the voters of such city or town?

3. Is it constitutional, in an act granting to women the right to vote in town and city elections, to provide that such an

act shall take effect throughout the Commonwealth upon its acceptance by a majority vote of the voters of the whole Commonwealth, including women specially authorized to register and to vote on this question alone ?

To the Honorable the House of Representatives of the Commonwealth of Massachusetts : —

In reply to your order of the 2d instant, a copy of which is annexed, we, the undersigned, four of the Justices of the Supreme, Judicial Court, respectfully submit the following opinion.

The questions all impliedly assume that the Legislature can constitutionally pass an act granting to women the right to vote in town and city elections, and we proceed to answer the questions on this assumption.

The Constitution of Massachusetts was framed after much public discussion, and after nine of the original thirteen States had established constitutions. The opinions of some of the men engaged in framing these constitutions are well known. John Adams took a principal part in framing the Constitution of Massachusetts, and his opinions upon government, both before and after its adoption, are found in his published works. The characteristic feature of all these constitutions is that they establish a government by representatives of the people, and not a government directly by the people. This was the kind of government to which the people were accustomed. All hereditary offices having been abolished, so far as they ever existed in any of the Colonies, and appointments to office by the British Crown having ceased at the time of the Revolution, the chief executive officers, and the members of both branches of the Legislature where there were two branches, were to be elected by the people. But the model adopted was in other respects the English form of government. While a purely democratic form of government existed in the towns in New England, few if any persons seem to have been in favor of such a form of government for the State.

By the Constitution of Massachusetts, as originally adopted, not only were the powers of the representatives of the people limited, but the powers of the people themselves were limited. The people limited their right to vote by requiring for the

electors of State officers certain qualifications, among which was a low property qualification. They required in the persons to be voted for higher qualifications. They provided that the judges should be appointed by the Governor and Council, and should hold their offices during good behavior, subject to removal only by impeachment or address. They provided that "The department of legislation shall be formed by two branches, a Senate and House of Representatives; each of which shall have a negative on the other." Const. Mass. c. 1, § 1, art. 1. They gave to the Governor a qualified veto over the acts of the Legislature. They provided for annual elections, and they declared that "the people of this Commonwealth are not controllable by any other laws than those to which their constitutional representative body have given their consent" (Declaration of Rights, art. 10) ; that "The people have a right, in an orderly and peaceable manner, to assemble to consult upon the common good, give instructions to their representatives, and to request of the legislative body, by the way of addresses, petitions, or remonstrances, redress of the wrongs done them, and of the grievances they suffer" (art. 19); and that "The Legislature ought frequently to assemble for the redress of grievances," etc. (art. 22). But there is nothing in any part of the Constitution which tends to show that the people desired that any law should ever be submitted to them for approval or rejection. The only expression of this kind relates to the manner of collecting the sentiments of the people in the year 1795, "on the necessity or expediency of revising the Constitution, in order to amendments," found in Const. Mass. c. 6, art. 10. They indeed declared that "All power residing originally in the people, and being derived from them, the several magistrates and officers of government vested with authority, whether legislative, executive, or judicial, are their substitutes and agents, and are at all times accountable to them" (Declaration of Rights, art. 5) ; but they provided for no appeal to themselves from any legislative, executive, or judicial act. They apparently relied upon frequent elections, when the officers were elective; upon the right of meeting and consulting upon the common good; upon the right of petition and of instructing their representatives ; upon impeachment; and upon the right of reforming, altering, and totally changing the form of govern-

ment when the protection, safety, prosperity, and happiness of the people required it (Ibid., art. 7). Apparently it was thought that the persons selected for the executive, legislative, and judicial offices in the manner prescribed in the Constitution would be men of good character and intelligence, of some experience in affairs, and of some independence of judgment, and would have a better opportunity of obtaining information, taking part in discussion, and carefully considering conflicting opinions, than the people themselves; and the people therefore put the responsibility of carrying on the government upon their representatives. In the legislative department they were particularly careful. They declared for the " freedom of deliberation, speech, and debate in either house of the legislature," (Ibid., art. 21,) and they secured deliberation in legislation by establishing two branches of the Legislature, and by requiring a submission of every legislative act to the Governor, but they reserved to themselves no direct power of supervision.

The constitutions of the different States resemble one another in many of their principal provisions, and it generally has been held, whenever the subject has come before the courts, that the legislative power cannot be delegated by the Legislature to any other body or authority, and that the people themselves have not retained this power except where they have expressly provided for it.

It is true that a general law can be passed by the Legislature, to take effect upon the happening of a subsequent event. Whether this subsequent event can be the adoption of the law by a vote of the people has occasioned some differences of opinion, but the weight of authority is that a general law cannot be made to take effect in this manner. Whether such legislation is submitted to the people as a proposal for a law, to be voted upon by them and to become a law if they approve it, or as a law to take effect if they vote to approve it, the substance of the transaction is that the legislative department declines to take the responsibility of passing the law; but the law has force, if at all, in consequence of the votes of the people; they ultimately are the legislators. It seems to us that by the Constitution the Senate and the House of Representatives have been made the legislative department of the government, and

that there has not been reserved to the people any direct part in legislation. The various amendments made to the Constitution since its adoption have not changed its character in this respect. By the second and ninth articles of amendments to the Constitution, an act constituting a town or towns a city government can be passed only with the consent of the inhabitants of such town or towns, and specific amendments to the Constitution proposed by the General Court must be submitted to the qualified voters of the Commonwealth. A city charter resembles a State constitution in this, that the government of the town is made by the charter a representative government, and it was originally declared that the people alone have a right to institute government and to change it. Declaration of Rights, art. 7. These amendments, as well as the other amendments to the Constitution, indicate no intention of having laws submitted to the people for adoption or rejection.

For these reasons, we are of opinion that the first question should be answered in the negative.

The second question requires additional consideration. There have been laws from the earliest times which delegated legislative powers to the inhabitants of towns, or permitted legislative powers to be exercised by such inhabitants, over subjects which were declared proper for municipal control. Laws conferring additional powers on towns or cities have been passed and made to take effect in any town or city upon acceptance by the qualified voters of the town or city, or of the city council. Some examples are found in Pub. Sts. c. 27, §§ 13, 27, 65, 74. Special laws have been passed conferring special powers on particular towns or cities, and general laws have been passed which relate to towns and cities having a certain population; and the consent of the inhabitants of a city or town sometimes has been required before certain special powers can be used. See Pub. Sts. c. 44, §§ 2, 7; c. 54, § 13; St. 1887, c. 411, § 92; St. 1891, c. 370. These statutes in general relate to local affairs, or to what has been called police regulations.

In *Stone* v. *Charlestown*, 114 Mass. 214, it was decided that a statute was constitutional which united two municipalities and provided that the act should not take effect unless accepted by the voters of the respective municipalities. It was said: " Amid

all the diversity of opinion upon the much vexed question, how far statutes may be made contingent upon being accepted by popular vote without violating the principle that legislative power cannot be delegated, there is a complete harmony of adjudication in favor of the authority of the Legislature, unless controlled by a special constitutional provision upon the subject, to submit statutes dividing or uniting counties or towns, or establishing or enlarging a city, to a vote of the inhabitants of the territory immediately affected."

There has been some conflict of authority upon the constitutionality of what are called local option laws, which have been principally laws regulating the sale of intoxicating liquors, but they have been held to be constitutional by a majority of the courts which have considered them. They have been held to be constitutional in this Commonwealth. *Commonwealth* v. *Bennett*, 108 Mass. 27. In that case it is said: "It has been argued in other cases, which have been brought before the court since the argument of the present case, that these statutes are unconstitutional, because they delegate to cities and towns a part of the legislative power. But we can see no ground for such a position. Many successive statutes of the Commonwealth have made the lawfulness of sales of intoxicating liquors to depend upon licenses from the selectmen of towns or commissioners of counties, and such statutes have been held to be constitutional. 7 Dane Abr. 43, 44. *Commonwealth* v. *Blackington*, 24 Pick. 352. It is equally within the power of the Legislature to authorize a town by vote of the inhabitants, or a city by vote of the city council, to determine whether the sale of particular kinds of liquors within its limits shall be permitted or prohibited. This subject, although not embraced within the ordinary power to make by-laws and ordinances, falls within the class of' police regulations which may be intrusted by the Legislature by express enactment to municipal authority."

It is certainly a difficult question to determine how far the principle of local option can be carried, and to what subjects it can be applied. An act granting to women the right to vote in town and city elections does not relate to the powers of towns and cities, which in some respects may well be different in different towns and cities on account of the number, wealth, and

pursuits of the inhabitants. Such an act relates solely to the persons who should be invested with a share of political power. Whether women should be permitted to vote in town and city elections seems to us a matter of general, and not of local concern. There is nothing in the history of Massachusetts which tends to show that the right to vote in towns and cities on town and city affairs has ever been regarded as a matter of police regulation or of merely local interest, or as a right which might be granted or withheld by a licensing board. It always has been determined by the Legislature by a general law, in force uniformly throughout the Commonwealth.

Article 9 of the Declaration of Rights declares that "All elections ought to be free; and all the inhabitants of this Commonwealth, having such qualifications as they shall establish by their frame of government, have an equal right to elect officers, and to be elected, for public employments." This in terms is confined to elections in which the qualifications of the electors and of the persons to be elected are established by the frame of government, but the principle declared has up to the present time always been adopted by the Legislature in passing laws relating to the right to vote in the election of town and city officers. The qualified voters in towns in this Commonwealth and their representatives in cities, are possessed of a large measure of political power. They have the taxing power for all municipal purposes, and it is well known that the amount of the city or town tax of any person usually exceeds that of his State and county tax. The tax is imposed on all the inhabitants in the town or city liable to be taxed, and on all the real property situated within the town or city, whether owned by residents or non-residents. The power of taxation is one of the essential and fundamental powers of government. It certainly would constitute an anomaly heretofore never known in this Commonwealth if in some cities and towns women were permitted to vote on questions which concern taxation, and in other cities and towns were not permitted. The question, we think, comes to this: Whether the Legislature constitutionally can delegate to the qualified voters of the inhabitants of a city or town the power of granting or refusing to grant to women who are inhabitants the right to vote in city and town affairs.

We are not aware that in any of the States where statutes have been passed conferring suffrage or municipal suffrage upon women, the principle of local option has been adopted in such statutes. The language of the Constitution, from which the Legislature derives the power of prescribing the qualifications of the electors of town and city officers, was taken from the Province Charter, and it is in effect that the General Court shall have full power and authority to make all manner of wholesome and reasonable laws, not repugnant to the Constitution, which they shall judge to be for the good and welfare of the Commonwealth, and "to name and settle annually, or provide by fixed laws, for the naming and settling all civil officers within the said Commonwealth, the election and constitution of whom are not hereafter in this form of government otherwise provided for." Const. Mass. c. 1, § 1, art. 4. Considering the nature of the power intended to be conferred, the history of legislation on the subject from the earliest times, and the language of the Constitution, we are of opinion that, if a law is to be enacted such as the question contemplates, it must operate uniformly throughout the Commonwealth, and that the second question should be answered in the negative.

For the reasons hereinbefore given, without considering others which might be suggested, the third question should be answered in the negative.

> WALBRIDGE A. FIELD.
> CHARLES ALLEN.
> JAMES M. MORTON.
> JOHN LATHROP.

February 28, 1894.

To the Honorable the House of Representatives of the Commonwealth of Massachusetts : —

In reply to your order I respectfully submit the following answer.

If the questions proposed to the justices came before us as a court and I found myself unable to agree with my brethren, I should defer to their opinion without any intimation of dissent. But the understanding always has been that questions like the present are addressed to us as individuals and require an individual answer.

It is assumed in the questions that the Legislature has power to grant women the right to vote in town and city elections. I see no reason to doubt that it has that power.

1. I admit that the Constitution establishes a representative government, not a pure democracy. It establishes a General Court which is to be the law-making power. But the question is whether it puts a limit upon the power of that body to make laws. In my opinion the Legislature has the whole law-making power except so far as the words of the Constitution expressly or impliedly withhold it, and I think that in construing the Constitution we should remember that it is a frame of government for men of opposite opinions and for the future, and therefore not hastily import into it our own views, or unexpressed limitations derived merely from the practice of the past. I ask myself, as the only question, what words express or imply that a power to pass a law subject to rejection by the people is withheld? I find none which do so. The question is not whether the people of their own motion could pass a law without any act of the Legislature. That no doubt, whether valid or not, would be outside the Constitution. So perhaps might be a statute purporting to confer the power of making laws upon them. But the question, put in a form to raise the fewest technical objections, is whether an act of the Legislature is made unconstitutional by a proviso that, if rejected by the people, it shall not go into effect. If it does go into effect, it does so by the express enactment of the representative body. I see no evidence in the instrument that this question ever occurred to the framers of the Constitution. It is but a short step further to say that the Constitution does not forbid such a law. I agree that the discretion of the Legislature is intended to be exercised. I agree that confidence is put in it as an agent. But I think that so much confidence is put in it that it is allowed to exercise its discretion by taking the opinion of its principal if it thinks that course to be wise. It has been asked whether the Legislature could pass an act subject to the approval of a single man. I am not clear that it could not. The objection, if sound, would seem to have equal force against all forms of local option. But I will consider the question when it arises. The difference is plain between that case and one where the approval required

is that of the sovereign body. The contrary view seems to me an echo of Hobbes's theory that the surrender of sovereignty by the people was final. I notice that the case from which most of the reasoning against the power of the Legislature has been taken by later decisions states that theory in language which almost is borrowed from the Leviathan. *Rice* v. *Foster*, 4 Harringt. (Del.) 479, 488. Hobbes urged his notion in the interest of the absolute power of King Charles I., and one of the objects of the Constitution of Massachusetts was to deny it. I answer the first question, Yes. I may add, that, while the tendency of judicial decision seems to be in the other direction, such able judges as Chief Justices Parker of Massachusetts, Dixon of Wisconsin, Redfield of Vermont, and Cooley of Michigan, have expressed opinions like mine.

2. If the foregoing view of the power of the Legislature is right, I am of opinion that the second question also should be answered, Yes. I find nothing which forbids the Legislature to establish a local option upon this point any more than with regard to the liquor laws. Under the circumstances, I do not argue this or the following question at length.

3. The act suggested by the third question is open to the seeming objection that it might take a part of their power out of the hands of the present possessors without their assent except as given by their representatives. But if, as I believe, the Legislature could give to women the right to vote if they accepted it by a preliminary vote, and could impose as a second condition that the grant should not be rejected by the voters of the Commonwealth, I do not see why it might not combine the two conditions into one, although as a result the grant might become a law against the will of a majority of the male voters. I answer this question, also, Yes.

OLIVER WENDELL HOLMES, JR.

February 28, 1894.

To the Honorable the House of Representatives of the Commonwealth of Massachusetts : —

I have carefully considered the questions submitted to the Justices of the Supreme Judicial Court by the Honorable House of Representatives on February 2, 1894, and am of opinion that

the first and third should be answered in the negative and the second in the affirmative.

In adopting the Constitution the people of the Commonwealth established a representative government consisting of three departments, the executive, the legislative, and the judicial. In these all the power originally residing in the people was vested, and through them all the functions of the government are to be performed. The framers of the Constitution did not seek to establish a pure democracy, but they preferred a system in which all power should be vested in officers chosen by the people. The execution of the laws is intrusted to the Governor and his associates in his department, the enactment of laws to the Legislature, subject qualifiedly to the approval of the Governor, and the interpretation of the laws to the justices appointed for that purpose. The members of each of these departments of the government are charged with the duty of doing that which belongs to their department. They cannot delegate their official power to others. The Governor is not a mere agent of the people who can refuse to assume the responsibility of action in matters within his department and put upon the electors as his principals the duty of deciding for him whether his actions shall be of one kind or another. He is for the time the repository of all the power of the people in those matters which belong to his office. He must do his official duty, and there is no way in which he can shift the burden of the executive business from his shoulders to those of the people of the Commonwealth. If an application for the pardon of a criminal is made to him he cannot relieve himself of responsibility by entering an order that the pardon shall be granted if the people of the State, at a meeting called for the purpose, vote in favor of it.

A judge who under the Constitution derives all his power from the people cannot refer back to the people the cases which he is called upon to decide. He cannot enter a decree that this case shall be decided for the plaintiff, or this law shall be declared unconstitutional if a majority of the people so decide upon the submission of the question to them at their next election. The sole power to grant pardons is in the Governor, and the sole power to decide judicial controversies is in the judges. By the bestowal of this power in the adoption of their Constitu-

tion the people were devested of that which was bestowed, and it can be restored to them by nobody so long as the Constitution remains unchanged.

Nor was it any more contemplated by the framers of the Constitution that the department of the government which is charged with the duty of enacting laws should fail to do its whole duty, and should merely propose to the people laws which shall or shall not take effect as the people vote. The Legislature is the law-making body. The people's representatives, acting together after due deliberation, are to complete the work of making such laws as seem to them good. The people delib- erately put away from themselves into the hands of this body all authority touching this subject, and until there is a change of the Constitution neither they nor the Legislature can put it or any part of it back. Their supreme power may find full exer- cise from time to time in choosing those who represent them, and in amending the Constitution or adopting a new one. Under our frame of government, to call in the people to vote directly upon the enactment of a law is, in my opinion, as much an attempt to delegate legislative power as the submission of such a question to any other tribunal.

The reasons which induced our forefathers to adopt such a sys- tem might be considered at great length, but we are not now so much concerned with the reasons for their action as with the na- ture and effect of it. The important fact is that their scheme of government was intended to cover the whole field, and it leaves no place for the people in the enactment of laws, except as they speak through their representatives.

In the interpretation of similar constitutions in other States there is a great weight of judicial authority in favor of this view. Decisions in accordance with it have been made by the courts of last resort in New Hampshire, New York, Pennsylvania, Dela- ware, Indiana, Iowa, Missouri, California, and Texas.

This is the rule in regard to what is strictly legislation, that is to say, the enactment of general laws for the people of a State, but it is very generally held that a Legislature may submit to the voters of towns and cities questions which are local in their nature, or which have in them a local element, such as to make it proper that they should be dealt with differently in different

places. This rule prevails in Massachusetts. A familiar example of the application of it' is the so called local option provision of our law in regard to the sale of intoxicating liquors. In Massachusetts, from the earliest times, the towns have been in a great degree intrusted with the management of their own affairs. For a time after the separation from England, previously to the adoption of our Constitution, they would seem to have been independent democracies. Since that time they have been allowed large liberty in the transaction of their business. The systems which the Legislature has provided for them have been elastic, so that they might be adapted to the different wants of the people of different municipalities. Towns are allowed to adopt by-laws on a great variety of subjects. Pub. Sts. c. 27, §§ 15–22. To a large degree cities and towns may determine for themselves the machinery, as well as the methods, by which they will manage their affairs. Within certain limits towns may determine the number of their selectmen, of their assessors and their school committee, and the length of their respective terms of office. Pub. Sts. c. 27, §§ 64, 65 ; c. 44, § 21. They may determine whether they will elect road commissioners ; Pub. Sts. c. 27, § 74 ; whether they will establish fire districts ; Pub. Sts. c. 27, § 37 ; and whether they will adopt the Australian method of voting in town elections ; St. 1890, c. 386. These are only a few of the matters which are left to their option. Statutes are passed nearly every year to take effect only in such cities or towns as choose to act under them. Sts. 1869, c. 169 ; 1871, c. 382 ; 1873, c. 95 ; 1882, cc. 154, 255 ; 1883, c. 203 ; 1886, c. 295 ; 1888, cc. 304, 431 ; 1890, cc. 264, 319 ; 1891, c. 370.

The doctrine on which these statutes are founded is not that the Legislature may delegate legislative authority, that is, authority to enact laws for all the people of the Commonwealth, but that it may submit to the voters of a city or town the right to vote on any question which may affect their interests differently from the interests of those in other parts of the Commonwealth. In doing this the Legislature recognizes the principle of local self-government, which has always been a distinctive feature of our New England system.

Voting in city and town elections is simply a part of the management of the city's or town's business. It can in no way

affect the State at large. The Legislature may give cities and towns as large liberty as it chooses in regard to any question which is local. If the education, or experience in business, or wealth of women, as compared with that of men, or the relative number of women and men differs materially in different municipalities, so as to make the considerations properly to be regarded in favor of allowing women to vote in town elections much stronger in one town than in another, the Legislature may leave to the voters of the town the question whether they will extend municipal suffrage to women. I think the Legislature may find great differences in different parts of the Commonwealth in regard to the desirability of the proposed change, and that the question to be considered is, in part at least, a local one. May there not be seaport towns where there are many widows of men lost at sea, and wives of seamen who by reason of their occupation are unable to be present at town meetings, and who are accustomed to be represented by their wives in the management of their business, and where a large part of, the taxable property could not be represented at town meetings except by women? And may there not be other cities or towns in the Commonwealth where the relative number of men and women, and their respective occupations, and their connection with the management of property, would be very different, and where the legitimate arguments which could be adduced in favor of municipal suffrage for women would not be the same? If citizens of Boston should petition for an amendment of the charter of that city, giving women the right to vote at city elections, it would seem that the Legislature might enact such an amendment, to be adopted by the city or not, as the voters should determine. I think that a town may as well be permitted to decide whether in conducting its government it will invite women to the polls, as whether it will adopt the Australian ballot, or whether it will act alone instead of being merged in another city or town by annexation.

It seems to me that the Legislature has constitutional authority to pass a law allowing women to vote at city and town elections in such cities and towns as shall determine in favor of giving them the ballot.

MARCUS P. KNOWLTON.

February 28, 1894.

To the Honorable the House of Representatives of the Commonwealth of Massachusetts:

In compliance with your order of February 2, 1894, I herewith respectfully submit my opinion upon the questions of law therein stated.

I assume that an act granting to women the right to vote in town and city elections is constitutional. I see no reason why such an act may not properly be made to take effect in particular towns and cities only, as well as in all. The right of the General Court to grant to the inhabitants of a particular place powers and privileges necessary or expedient for its regulation or government is plain and unquestioned. I find nothing in the Constitution to require uniformity throughout the Commonwealth in the selection of the inhabitants to whom the local government of a town or city shall be committed.

In my opinion, under our Constitution the General Court may provide that any act of the Legislature shall take effect upon acceptance by some body of voters designated in the act. This practice has been not infrequent here from an early date, both in local statutes and statutes concerning corporations, and has been held constitutional by decisions of the Supreme Judicial Court. See *Wales* v. *Belcher*, 3 Pick. 508, 510; *Stone* v. *Charlestown*, 114 Mass. 214, 221. It is true that the act under consideration in *Wales* v. *Belcher* may find special justification under the provisions of the second article of amendment; but the act dealt with in *Stone* v. *Charlestown*, though local, was not within the letter of that amendment; and in both of those decisions the judgment of the court was put on broad grounds. In the former Chief Justice Parker said, "Why may not the Legislature make the existence of any act depend upon the happening of any future event?" And in the latter Chief Justice Gray held that the Legislature did not in any sense delegate its constitutional authority in passing the act in that form. In respect to this question I am unable to see any sound distinction between general and local acts. If the power resides in the Legislature at all, it may be exercised in its discretion. The provision of the Constitution in article 10 of the Declaration of Rights, that "the people of this Commonwealth are not controllable by any other laws than those to which their constitutional representative

body have given their consent," impliedly sanctions the power. The constitutional representative body "give their consent" to every such law in the most formal manner. Nor is it, to my mind, an objection to the validity of a law so framed that the body whose further assent is required is composed in part of inhabitants other than qualified voters. In the case of acts of incorporation the members of the voting body need not be even inhabitants, and yet without their assent the act is not law, and with their assent it is law.

For the reasons stated, I am of opinion that each of the three questions set forth in the order should be answered in the affirmative.

JAMES M. BARKER.

February 28, 1894.

---

### ORDER OF COURT

#### COMMONWEALTH OF MASSACHUSETTS.

At a sitting of the Supreme Judicial Court holden at Boston in and for said Commonwealth, on the twenty-sixth day of February in the year of our Lord one thousand eight hundred and ninety-four : present,

HON. WALBRIDGE A. FIELD, CHIEF JUSTICE.
HON. CHARLES ALLEN,
HON. OLIVER WENDELL HOLMES, JR.,
HON. MARCUS P. KNOWLTON,
HON. JAMES M. MORTON,          } JUSTICES.
HON. JOHN LATHROP,
HON. JAMES M. BARKER,

*Ordered,* That the following be the forms of proclamation at the opening and adjournment of this court : —

#### OPENING PROCLAMATION.

Hear ye! Hear ye! Hear ye! All persons having anything to do before the Honorable the Justices of the Supreme Judicial

Court now sitting at                          , within and for the County of              , draw near, give your attendance, and you shall be heard.

God save the Commonwealth of Massachusetts.

### ADJOURNMENT FOR THE DAY.

Hear ye! Hear ye! Hear ye! All persons having anything further to do before the Honorable the Justices of the Supreme Judicial Court now sitting at                  ,within and for the County of              , at present, depart, and give your attendance at this place to-morrow morning at    o'clock, to which time and place the sitting of this Court is now adjourned.

God save the Commonwealth of Massachusetts.

### PREVIOUS PROCLAMATION.

Hear ye! Hear ye! Hear ye! All persons having anything to do before the Honorable the Justices of the Supreme Judicial Court now sitting at                  , within and for the County of              , draw near and give your attendance, for this sitting of the Court is about to be adjourned without day.

### FINAL PROCLAMATION.

Hear ye! Hear ye! Hear ye! All persons having anything to do before the Honorable the Justices of the Supreme Judicial Court now sitting at                  , within and for the County of              , at present, depart, and give your attendance upon a new summons, as this sitting of the Court is now adjourned without day.

God save the Commonwealth of Massachusetts.

By the Court,

JOHN NOBLE, *Clerk.*