GEORGE W. DOWNS, TREASURER OF MORRIS COUNTY, RE-LATOR, v. THE MAYOR AND BOARD OF ALDERMEN OF THE TOWN OF BOONTON. AND SAMUEL HARRIS, TREASURER OF THE TOWN OF BOONTON, RESPON-DENTS.

Argued June 5, 1923—Decided December 6, 1923.

1. Chapter 122 of the laws of 1920, which provides for the estab-lishment of free public libraries in each county of the state, is not invalid because the acceptance or rejection of its provisions is submitted to the entire voting population of the county, re-gardless of whether some of the municipalities may immediately come within the operation of its provisions, since provision is made therein for the ultimate participation in the general scheme of such municipalities as presently maintain free public libraries, thus giving the legislation, when adopted, uniform operation throughout the county.

2. Where money was assessed, levied and collected according to the provisions of a statute, and turned over to the town collector, he occupies the legal status of trustee of the fund, and as such trustee he cannot question the constitutionality or legal pro-priety of the statute; his duty is in nowise discretionary, but entirely ministerial.

---

On application for mandamus.

Before GUMMERE, CHIEF JUSTICE, and Justices MINTURN and BLACK.

For the relator, Charles A. Rathbun.

For the defendants, Samuel F. Garrison.

The opinion of the court was delivered by

MINTURN. J.   The legal voters of the county of Morris, at the general election held in November, 1921, adopted the provisions of an act entitled "An act to provide for the establishment and maintenance of county free libraries." *Pamph. L.* 1920, *ch.* 122.   That act provides *inter alia* that "there shall be established in each county of this state, by the board of chosen freeholders thereof, a free public library, to be known as 'The Free County Library.'   Such library shall be established for such subdivisions of said counties as do not maintain free public libraries."

Pursuant to the fiscal provisions of the act the board of freeholders of Morris county "assessed, levied and collected" from the municipalities of the county what they deemed to be a sum sufficient "for the establishment, maintenance and up-keep of the library."   Provision is also made in the act for the participation in its provision of "any municipality in such county now maintaining a public library."

After the adoption of the act as aforesaid the board of chosen freeholders passed a resolution requiring the various municipalities not maintaining a free public library, which included the town of Boonton, to raise by general taxation for the purpose one-fifth of a mill on the real and personal property of the municipalities in the county.   In due course this sum was levied, assessed upon and collected from the other municipalities, including the town of Boonton, realizing from that town the sum of $837,67, which sum was duly turned over by the collector of taxes to the town treasurer, the defendant Samuel Harris, who is still in possession of the amount, refusing, after repeated demands, to turn the same over to the county treasurer, to be applied by him as required by the provisions of the act.

*In limine* the constitutionality of the act is questioned, but our examination of its title and provisions has resulted in convincing us of its constitutionality.   The propriety of sub mitting to the voters of a district the adoption by them of the provisions of an act relating to the health and general welfare of the body politic therein, has been repeatedly

affirmed in the adjudications of the several states and the federal courts, and has been placed beyond the realm of controversy in this state, since the determination by the Court of Errors and Appeals of *Paul v. Gloucester,* 50 *N. J. L.* 585, followed by *Attorney-General* v. *McGuinness,* 78 *Id.* 346, 384.

The fact that the act concedes to the entire voting population of the county the acceptance or rejection of its provisions, regardless of whether some of the municipalities may immediately come within the operation of its provisions, cannot invalidate the act, since provision is made therein for ultimate participation in the general scheme of such municipalities, as presently maintain free public libraries, thus giving to the legislation, when adopted, uniform operation throughout the county and creating therein an entire system of county free libraries uniform in creation, operation and control. Such legislation is constitutional. *Paul* v. *Gloucester, supra; Attorney-General* v. *McGuinness, supra; Stone.* v. *Charlestown,* 114 *Mass.* 214; *Lynn* v. *Essex Co.,* 148 *Id.* 151.

It is also urged that the town of Boonton is not within the class of municipalities, without a free public library, since it possesses a library of a *quasi*-public nature, to which its citizens may resort. But it is manifest that such an institution is not a free public library within the purview of this legislation. 3 *Comp. Stat., p.* 3098; *Pamph. L.* 1918, *p.* 290; *Pitney, Executor, &c.,* v. *Bugbee, Comptroller,* 98 *N. J. L.* 116, 780; *S. C. affirmed, Id.* 889.

The control and management of the town library is vested in trustees, who are selected by a private interest, which partly maintains the project; the town contributing by general taxation a modicum of the cost of maintenance. Nor is it a library maintained by the town so as to bring it within the eighth section of the act under consideration. This construction is emphasized by section 1 of chapter 107, laws of 1923, which expressly limits the application of the provisions of the act *sub judice* to such county subdivisions "as do not maintain and control free public libraries," pursuant

to the provisions of existing legislation upon the subject of free public libraries.

But, manifestly, a complete answer to the objections presented by this respondent to the demand made upon him for this fund is that he is not in a position to question the legality of its creation. The money was assessed, levied and collected, according to the provisions of the statute, and turned over to him by the collector of the town, to be held by him in trust, for the purpose directed by the act. He occupies the legal status, therefore, of holding the fund as trustee for the purpose for which it was collected.

The right to question the legality of the act and the proceedings taken under it resided, in the first instance, with the municipalities or the taxpayer at the time the resolution for the assessment of the tax was passed, and that period having passed, and the people having complied with the provisions of the act in that respect, the defendant treasurer of the town is in no position to question its constitutionality or legal propriety. His duty in the situation here presented is in nowise discretionary, but is entirely of a ministerial character, and *mandamus* is the proper remedy to compel the performance of the duty imposed upon him by the provisions of the act. *State, ex rel. Wilson,* v. *Swain,* 60 *N. J. L.* 115; *Warmolts* v. *Keegan,* 69 *Id.* 186; 4 *Dill. Mun. Corp.* 2659.

Since the action of the town treasurer in this respect is dependent upon the passage of a prior resolution by the governing body of the town directing performance, the writ, when issued, will be directed to the town council, as well as to the town treasurer, commanding the execution of the duty in accordance with the provisions of the statute.

Such will be the order.