THE STATE, EX REL. JACOB S. HERDER, COLLECTOR OF TAXES OF EAST AMWELL TOWNSHIP, HUNTERDON COUNTY, v. COUNTY COLLECTOR OF HUNTERDON COUNTY.

THE STATE, EX REL. JOHN S. BUSH, COLLECTOR OF TAXES OF DELAWARE TOWNSHIP, HUNTERDON COUNTY, v. COUNTY COLLECTOR OF HUNTERDON COUNTY.

1. A county collector is not required or permitted by the "act to establish a system of public instruction," (*Nix. Dig.* 878, § 75,)* to exercise any discretion as to how much of the state appropriation the several township collectors in the county are entitled to receive from him. That question as between these officers, is settled conclusively by the order of the county superintendent of public schools.

2. The notion that a county collector can, in any case, lawfully reduce the amount by setting up some counter claim, whether in his own behalf or in behalf of his county, and whether against the township collector, personally, or against his township, is neither justified by the language nor consistent with the policy of our school laws.

Application for *mandamus.*

Argued at June Term, 1873, before Justices SCUDDER and WOODHULL.

For the relators, *A. V. Van Fleet.*

For the defendants, *G. A. Allen.*

The opinion of the court was delivered by

WOODHULL, J. This is an application for a writ of *mandamus*, to be directed to the collector of the county of Hunterdon, commanding him to pay to the collector of the township of East Amwell, in that county, the amount remaining due on the following order:

"To the Collector of Hunterdon County—Pay to the order of the collector of East Amwell township, $1519.44, being

* *Rev., p.* 1084, § 83.

the amount apportioned out of the state school tax for the support of public schools in said county, for the year 1871.

"CORNELIUS S. CONKLING,

"$1519.44.                    County Superintendent."

By the school law of April 6th, 1871, supplemental to that of March 21st, 1867, provision is made for the assessment of a state school tax of two mills on each dollar of the valuation contained in the last abstract of ratables from the several counties. This is the school, tax referred to in the order.

The whole amount of the two mills tax apportioned by the state superintendent of public instruction to the county of Hunterdon was $45,577.05, which was duly paid over to the collector of that county. This sum was afterwards apportioned by the county superintendent among the several townships and boroughs of the said county. The apportionment to East Amwell township being the precise amount for which the above order is drawn.

The relator having received the order from the county superintendent presented it, a few days afterwards, to Mr. Dunham, the cashier of the Hunterdon County Bank, and received thereon from him, as the agent of the county collector, the sum of $1327.43, a sum less by $192.01 than the amount called for by the order. This balance of $192.01, the agent, and subsequently the county collector himself, refused to pay, and it still remains unpaid.

The only reason given by the county collector for his refusal to pay the order in full, and the only ground upon which he now attempts to justify it is, that the township of East Amwell failed to raise its proper proportion of the school tax for the year 1871, and that the balance withheld is the exact amount required to make good the deficiency.

The answer to this on the part of the relator is two fold: 1. That there was, in fact, no failure, &c., as alleged by the defendant, and 2. That even if there was, such failure and the resulting deficiency can furnish no legal excuse for the defendant's refusal to pay the full amount of the order.

The last proposition was the one chiefly urged in support of the present application, and its correctness, cannot, I think, be successfully controverted.

The 75th section of the act to establish a system of public instruction, approved March 21st, 1867, provides that the county collector of each county shall receive and hold in trust that part of the state appropriation belonging to his county, and shall pay out the same to the collectors of the several towns and to the city treasurers of the cities of his county, only on the orders of the county superintendent. *Nix. Dig.* 878, 879, § 75.*

By the fifth section of the act of April 6th, 1871, supplemental to that of 1867, it is made the duty of the county superintendent of each county to apportion the state school money to the several townships of his county, and to the towns and cities therein, not included in said townships, and also to the several school districts; and the same section provides further, that it shall be the duty of the county superintendent, on or before the 10th day of February of each year, to draw orders on the county collector, and in favor of the township collectors and city treasurers of his county, for the payment of said moneys so apportioned, and that said collectors and treasurers shall apply for and be entitled to receive the same as soon as such orders are received.

The duty and the authority of the township collector, with respect to the school moneys apportioned to his township, as well as the duty of the county collector, with respect to the amount thus apportioned, are so plainly marked out in the acts referred to, and especially in the closing sentence of the section last cited, as to leave little room for misunderstanding.

In the first place, it is made the duty of the township collector, as soon as he receives the county superintendent's order, to apply to the county collector, on whom it is drawn, for payment of the money apportioned to his township. In the next place, what he is thus bound to apply for to the county collector—that is the money apportioned to his township—he is

*Rev., p. 1084, ¿ 83.*

expressly declared to be entitled to receive, and precisely that amount the county collector must, of necessity, be bound to pay.

The law leaves him no alternative.    It neither requires nor permits him to exercise any discretion as to how much the township collector is entitled to receive from him.    That question, as between these officers, is settled conclusively by the county superintendent's order.    This alone measures the right of the one to receive, and the duty of the other to pay.

If good at all, the order must be good for the full amount for which it is drawn.

The notion that a county collector can, in any case, lawfully reduce the amount, by setting up some counter claims, whether in his own behalf, or in behalf of his county, and whether against the township collector personally, or against his township, is neither justified by the language, nor consistent with the policy of our school laws.

It is, of course, a primary object of these laws, to provide for the safe and prompt transmission of the public school money from the treasury of the state, and for its speedy and proper distribution amongst those who are entitled to its benefits.

To secure these results, two classes of officers are employed. First, the treasurer of the state, and the several county and township collectors, each of whom is for a time entrusted with the actual custody of the fund in question, or of some portion of it; and secondly, the state superintendent, the comptroller, the county superintendents and the district clerks, who are to apportion and direct the payment of it.

The power which the several officers of the first class are permitted to exercise over the school money in their hands, is, in degree and kind, substantially the same.

So that if a county collector may lawfully determine for himself, whether or not he will pay a county superintendent's order, the state treasurer may, at his discretion, decline to honor the comptroller's warrant, and a township collector may in his turn repudiate the orders of the district clerks.

It cannot be doubted that the exercise of such power by

these officers, or any one of them, instead of furthering, would necessarily tend to obstruct and hinder the transmission and proper distribution of the public school moneys, and would be sure to introduce utter confusion in the administration of this cherished fund.

My conclusion is, that the township collector of East Amwell had a right to receive the full amount of the order in question, and that it was the duty of the county collector to pay to him that amount, and nothing less.

The collector's duty being purely ministerial, and there being no other remedy, the relator is clearly entitled to a *mandamus ;* and as there is no dispute about any material fact, and the duty to be performed was of a public nature, and of some importance, the case falls within the decision of this court in *State, ex rel. Love et al.,* v. *Freeholders of Hudson County,* 6 *Vroom* 269, and the writ should be peremptory, in the first instance.

CITED in *Board of Education* v. *Sheridan* 13 *Vr.* 64.