THE STATE, EX REL. THE BOARD OF EDUCATION OF THE TOWN OF UNION, &c., v. THE BOARD OF COUNCIL OF THE TOWN OF UNION.

---

THE STATE, EX REL. THE BOARD OF EDUCATION OF THE TOWN OF UNION, &c., v. WILLIAM BRAUNSTEIN, TREASURER OF THE TOWN OF UNION.

1. The charter of the Town of Union provides that the money voted by the people to be raised for school purposes shall be paid by the collector of taxes directly to the town treasurer, and by him shall be paid out upon warrants signed by the president of the board of education.

The common council has no control over this fund, and a resolution adopted by it directing the treasurer to retain a portion of the school fund and apply it to the payment of certain special assessments against school property, is a nullity.

2. The treasurer having so applied a portion of the fund, against the protest of the board of education, a *mandamus* will go directing him to restore it to the school account.

On application for *mandamus*.

These two cases involve the same subject. A rule to show cause was allowed why *mandamus* should not issue requiring the board of council of the Town of Union to restore and place to the credit of the school fund of said town and keep subject to the warrant and disposal of the board of education of the said town the sum of $1,435.95, being the amount ordered by resolution of the board of council to be deducted from said fund for alleged assessments against school properties.

A rule upon the treasurer was also allowed, directing him to show cause why *mandamus* should not issue requiring him to restore and place to the credit of the school fund of the said town and keep subject to the warrant and disposal of the board of education the said sum of $1,435.95.

Argued at June Term, 1889, before Justices REED, MAGIE and GARRISON.

For the relator, *John A. Landregan.*

For the respondent, *Warne Smythe.*

The opinion of the court was delivered by

REED, J.    Section 43 of the charter of the Town of Union (*Pamph. L.* 1874, *p.* 668) provides that the legal voters of said town shall have power and authority at their annual charter election in each year to raise by plurality of votes such sum as they may think proper and necessary for the support and

maintenance of the poor, the fire department, police, for the support of public schools and for the making and repairing of roads and highways, which sum shall be applied by the councilmen to the purposes designated by the people at such charter election, and shall not use any part of the said sum for any other purposes.

At the town election held in April, 1888, $9,000 was voted by the people for the support of the public schools of the town. As appears by section 11 of the charter (*p.* 652), all the taxes received by the collector of taxes are paid over to the treasurer. These taxes, with some exceptions, he pays out upon warrants signed by the chairman of the board of council. The moneys raised for school purposes, however, take a different course.

By section 52 of the charter it is provided " that all moneys raised in said towns for public schools, as well as the money apportioned to said town from the said school fund, shall be kept by the treasurer of said town subject to the order of said board of education, and to be paid out only on a warrant signed by the president of said board."

The board of council took it upon themselves to give a different direction to a portion of the $9,000 voted to be raised in the year 1888.

At a meeting of the board held on December 20th, 1888, the following resolution was adopted by it:

" That the treasurer be and is hereby directed to transfer from the amount of tax collected for the year 1888 the sum of $9,000 to the school fund, the same being the amount of the appropriation voted for at the last charter election, after deducting from the said amount the sum of $1,435.95, being the amount owing by the board of education for assessments levied against school properties remaining unpaid at date hereto, and that the clerk be and is hereby directed to make out the necessary papers and vouchers for said payment, and transmit the same to the board of education."

Now, it is quite clear from section 52, above mentioned, that the board of council have no control whatever over the school

fund. It goes directly from the hands of the collector of taxes into the hands of the treasurer and there remains, subject only to the warrants drawn by the president of the board of education.

The alleged claim for back assessments cannot be collected, if they can be collected at all, in the way adopted by the council. The resolution of council is a nullity. But it is apparent that, in the absence of any duty on the part of the board of council in respect to this fund, no right of *mandamus* can go to them compelling any action in relation thereto.

So, in the first case, the writ must be refused.

As to the writ prayed for against the treasurer, I think it should be allowed. It is true that there has been no refusal to pay any warrant drawn by the board of education, but I think it is his duty to keep the moneys that come to his hands, as those collected upon the assessment for school purposes, credited in a separate account to the school department.

In the testimony of the treasurer he says: " I took $9,000 from the general fund and credited it to the board of education, that amount less $1,435.95 deducted for assessments; I therefore credited the school fund with $7,564.05, being the balance as above stated." He then states that the $1,435.95 was applied to the payment of the assessments. He further says: "At the time I received this resolution I had enough money on hand, from that and other funds, to place $9,000 to the school fund." There is no contention that the full amount of the $9,000 was not properly accreditable to the school fund, but the right to retain the $1,435.95 was based upon the right to apply it to the payment of back assessments. The action of the treasurer was an announcement that this part of the $9,000 was not in his hands to meet any warrants that might be drawn, and such warrants, if drawn, would not be honored. In this position of affairs, the placing of the entire sum to the credit of the board, upon which fund orders could be drawn, was an official duty.

In this case the writ should be allowed.