PATRICK H. SHIELDS, COLLECTOR OF PASSAIC COUNTY, RELATOR, v. THE MAYOR, &c., OF PATERSON, THE CITY COMPTROLLER AND CITY TREASURER.

1. A peremptory *mandamus* will issue for the payment of state and county taxes by a city where it has collected sufficient moneys for city, county and state purposes to pay such taxes.
2. The charter of the city of Paterson only modifies the twenty-fifth section of the Tax act of April 12th, 1866, so far as to give the city authorities until December 20th to pay over the state and county taxes due for the year.
3. The proper remedy by the city authorities to attack illegal appropriations of money made by the board of chosen freeholders is by writ of *certiorari*.
4. On an application for *mandamus* to compel the city to pay state and county taxes of 1892, it would be no defence to set up that there were illegal appropriations made in 1891 by the board of chosen freeholders, which require the imposition of an additional amount of taxes in the tax resolution of 1892.

On rule for *mandamus*.

Argued at February Term, 1893, before Justices DEPUE, LIPPINCOTT and ABBETT.

For the relator, *De Witt C. Bolton* and *William Nelson.*

For the respondents, *Thomas C. Simonton.*

The opinion of the court was delivered by

ABBETT, J. This is an application for a peremptory *mandamus* to compel the mayor and aldermen of Paterson to appropriate, raise and order the payment of $158,334.84 to the county collector of the county of Passaic for state school and county taxes, and to direct Daniel Miller, the comptroller of Paterson, to draw his warrant therefor, and the city treasurer to pay said sum to the county collector.

The facts upon which this application is based are as follows: On May 11th, 1892, the board of chosen freeholders

of the county of Passaic adopted a resolution directing the assessors of the respective cities and townships in the county of Passaic to assess the sum of $349,469 upon the inhabitants of the cities and townships of the said county and their estates. On or about May 25th, 1892, the county collector received from the state comptroller a notice that the amount of tax levied for the support of free public schools upon the real and personal property in Passaic county for the year 1892 was $123,080.69, with notice that the same was due and payable into the state treasury on or before January 1st, 1893. This statement the county collector laid before the assessors of the townships and wards of said county at their annual meeting held next after he received the same; that the county board of assessors, on August 4th, 1892, adjusted, fixed, ascertained and apportioned the proportion of the sums aforesaid to be levied and collected in each city and township in said county, and on August 4th, 1892, delivered to the county collector an abstract of all the ratables in each city, ward and township in said county as returned by the said assessors of the county of Passaic for the year 1892, together with a statement of the proportion of the said state school tax apportioned to the said county by said state comptroller, and of the said county tax so ordered to be raised by the said board of chosen freeholders, and as adjusted, fixed, ascertained and apportioned by said board of assessors to be levied and collected in each city and township in said county, which abstract and apportionment was signed and sworn to by said assessors, or by a majority of them, according to law. It appears by said abstract and apportionment that the proportion of the state school tax to be levied on and collected in the city of Paterson was $95,-300.35, and that the proportion of the county tax to be levied and collected in said city was $270,599.49. On June 2d, 1892, the board of aldermen had passed the annual tax ordinance for 1892, which directed that $875,487 be raised by taxation to defray the expenses of the said city for the current fiscal year, and for the payment of state school and county tax required to be paid by said city, &c. By section 3 of said

ordinance it was declared that of the said moneys mentioned the following sums were necessary for, and appropriated for, the purposes therein set forth, to wit, city share of county tax, $207,575 ; city share of state school tax, $95,000.

The city of Paterson has paid said sum of $207,575 to the county collector, claiming that said amount was its just share of the county tax, but has failed to pay either the state school tax or the balance of $63,024.49 due on the county tax. This leaves a deficiency for collection by the county collector from the city of Paterson of $158,324.84. This sum has been demanded by the county collector and is still unpaid.

The objections necessary to consider, which are raised by the city authorities to the payment of these amounts, are as follows :

*First.* That the board of chosen freeholders illegally appropriated money in the county tax resolution of 1892 to cover up and pay outstanding obligations unlawfully incurred in 1891.

*Second.* Because said board of freeholders appropriated more money than was necessary for the actual expense of said county for the fiscal year of 1892, in order to apply the excess to certain outstanding unlawful obligations.

*Third.* That while it is admitted that the county collector is entitled to $95,300.35 for state school tax, the city claims that it is entitled to an offset of $90,523.96, being the amount apportioned to the city from the state school tax.

*Fourth.* Because there is no money to the credit of the city of Paterson on the city comptroller's books, and the board has not ordered the warrant drawn on the treasurer for the payment of the amounts claimed.

*Fifth.* That the city, in the annual tax ordinance passed June 2d, 1892, only appropriated $207,575 in payment of the county tax, instead of $270,599.49, and that the city has paid the county collector said sum of $207,575.

The city charter (*Pamph. L.* 1871, *p.* 808) provides in section 27, among other things, that on or before the second Monday in June in each year the board of aldermen shall by

ordinance declare the amount of money necessary for defraying the expenses of the said city for the current year, and for all other objects and purposes authorized by said act, and for the payment of all legal debts and liabilities of said city, which sum shall be assessed and collected as thereinafter provided.

Under section 41 of said act the commissioners of assessment and revision of taxes, or such of their number as they shall designate for that purpose, shall attend all meetings of the county board of assessors, which shall be convened according to law, and on the day succeeding the adjournment of the annual meeting of said county board said commissioners shall proceed to fix and determine such a percentage upon the gross valuation for that year, of the taxable property in said city, as will produce the amount of tax declared by the board of aldermen to be necessary for state, county and city purposes; and the said commissioners are directed to complete their lists, assessing to each person, firm, company or corporation named therein his, her, its or their proportion of the state, county and city taxes.

Section 67 provides that the city comptroller shall, when ordered, draw warrants on the city treasurer for the payment of claims subject to certain limitations provided in the act.

Section 69 provides that whenever the total amount of moneys designated in the tax ordinances and raised by tax for any specific purpose in any year shall be expended or appropriated, the city comptroller shall immediately notify the mayor, the city treasurer and the board of aldermen thereof, and no further or other appropriation shall be made, or ordinance or resolution passed, which shall involve the expenditure of money during the said fiscal year, except by a three-fourths vote of all the members of the board of aldermen; and the comptroller is further prohibited from drawing any warrant upon the city treasurer upon any specific account for such an amount as will exceed the appropriation in the tax ordinance for that year, for that purpose, unless the same shall have been ordered by a three-fourths vote of the board of alder-

men after the said board shall have received the notification above mentioned.

Section 73 of the charter provides that the city treasurer shall disburse moneys paid into the city treasury upon the warrant of the comptroller, or of the department of public instruction, and in no case shall the public money be drawn from the city treasury except it be first specifically appropriated by the board of aldermen to some public object requiring the outlay.

Section 74, as amended by the laws of 1873 (at *p.* 804), provides that the city treasurer shall pay over to the collector of the county of Passaic, on the 1st day of November and on the 1st day of December in each year, so much of the quota of tax required by law to be raised in said city for state and county purposes as shall have been received by him, and on the 20th day of December in each year he shall pay over to said collector the balance of said quota then remaining unpaid.

Upon the above facts and provisions of the city charter, and section 25 of the supplement to the Tax act of April 11th, 1866 (*Pamph. L.,* p. 1078 ; *Rev.,* p. 1159, § 83), the question is presented whether a *mandamus* should issue in this case against the defendants as prayed for. No objection has been raised by the defendants as to the amount and correctness of the state school tax. It is admitted that the city is legally called upon to pay the $95,300.35 to the county collector, so that the county collector can pay it to the state treasurer. The city, however, claims that as it will be entitled to receive from the county $90,523.70, school moneys apportioned to said city for 1892 on account of state appropriations from state school tax, that it has a right to offset that sum against the amount due to the county collector for state school taxes. No such right of offset exists. It is the duty of the city to pay the full amount to the county collector, and when that amount has been paid it will be the duty of the county collector to pay the $90,523.70 to the city after the county has received from the state treasurer the amount of the state appropriation from school taxes due to the county of Passaic.

When this latter sum is due from the county collector, the presumption is that he will pay it to the city. If he fails or refuses so to do, the court will, by *mandamus*, compel him to pay over that sum. The city is not at present entitled to receive the same.

In reference to the objections made by the city to the payment of the county tax for 1892, they are based upon alleged illegal expenditures of money made by the board of chosen freeholders in 1891, which are alleged to be a burden upon the taxpayers of the city. The proper course for the city authorities to have taken was to have attacked these alleged illegal acts by *certiorari* to remove the proceedings in reference thereto.

It has been held that objections may be made by municipal corporations to an illegal apportionment of taxes upon the property within its limits, although the burden of the tax falls on the individual taxpayers. *Bayonne* v. *Commissioners of Appeals*, 17 *Vroom* 93, and cases there cited.

The city authorities have stood by and permitted these moneys to be expended without applying to the court to review the proceedings under which the expenditures were made, and without any endeavor on their part to prevent or review the same, although now seeking to attack the county tax resolution of 1892, because they claim that its increased amount over the preceding year of $109,469 is to place the county in funds for deficiencies which arose in 1891 by reason of the court-house purchase and other matters which were made without legal appropriations.

It has been held that even a misappropriation of corporate funds cannot render a subsequent tax illegal, though levied for the very purpose of meeting a deficiency thereby caused (*State, Harmed, pros.,* v. *Manning,* 12 *Vroom* 275); but in this case the county tax of 1892 does not, upon its face, appear to make any appropriation for the misappropriation of funds in 1891. It apparently contains items for work for 1892. If either of these items, or of any other appropriations made in 1892, are improper, and thereby a larger amount is imposed

upon the city of Paterson for 1892 than should be lawfully assessed upon property in that city, it could be attacked on *certiorari*. Not only could the city attack these appropriations, but any taxpayer might, on *certiorari*, apply to set aside any wrongful, illegal or fraudulent appropriation by the freeholders of the moneys in the county treasury, and, in addition, there might be other modes of redressing such wrong. *State, Lewis, pros.*, v. *Freeholders of Hudson,* 8 *Vroom* 254.

The Court of Errors, in *Davenport* v. *City of Elizabeth,* 12 *Vroom* 362, held that in this state a writ of *certiorari* is a perfect safeguard against unwarranted taxation of every description. The power of the court can also be invoked by any party that might be affected by an illegal ordinance or resolution, for the purpose of having a hearing, before any attempt had been made to enforce it. *State, Danforth, pros.,* v. *City of Paterson,* 5 *Vroom* 163; *State, Gregory et al., pros.,* v. *Jersey City, Id.* 390.

The failure of the city authorities to assess the proper amount of county taxes will not relieve them of the duty of assessing for the deficiency. A *mandamus* was allowed to compel townships to pay state and county taxes out of the first tax moneys collected; and it was held that even if the moneys collected for such taxes had been squandered, wasted or misapplied, that the township was liable to make good such deficiency, by adding the same to the quota of such township in the next assessment. *Veghte* v. *Township of Bernards,* 13 *Vroom* 338.

In the latter case it was also held that the amounts to be raised for county purposes are determined by the board of chosen freeholders, and, like state taxes, are entirely independent of the sums that are voted to be raised at town meetings; that the township officers who are employed in assessing and collecting these taxes, act ministerially for the county, by direction of the statute, but as they are appointed by the townships, and give bonds to them for the faithful performance of their duties, it is right that the townships should be held responsible for the proper conduct of these officers when

performing their duties, under statutory requirements for the state and the county, for the collection of taxes. *Veghte* v. *Township of Bernards,* 13 *Vroom* 340.

In the case of *Bayonne* v. *State, Kingsland, pros.,* 12 *Vroom* 368, the Court of Errors and Appeals held that the state policy embodied in section 25 of the act of April 11th, 1866 (*Rev., p.* 1159, § 83), is to give the first fruits of taxation to the state and county, in derogation to the claims of the townships and cities, and that this adjustment was necessary in order to exempt the state and counties from bearing any part of the loss annually sustained from the deficit occurring in the collection of taxes ; that such deficit was to be the loss exclusively of the townships and cities. The charter of the city of Bayonne required the collector of revenue to pay over all moneys received by him to the city treasurer as soon as collected, whose duty it was to pay over to the treasurer of the state or to the collector of Hudson county the full quota of taxes required by law to be raised in said city for state and county purposes, so far as the same may have been collected. The court held that, notwithstanding this provision in the city charter, it should be so construed as to require the payment of the state and county taxes out of the first moneys collected from all sources ; that the general act must be placed in juxtaposition with the special act, and when thus read the intention of giving the special privilege claimed by Bayonne did not appear with such distinctness as to overcome the intendment against such a purpose that arises from the existence of a contrary policy being established in all other parts of the state. A peremptory *mandamus* was issued in that case to compel the authorities of Bayonne to pay the county taxes.

The charter of the city of Paterson requires the payment of all the state and county taxes by the 20th day of December. Before this writ was applied for the receiver of taxes and assessments in the city of Paterson had collected, up to February 25th, 1893, $695,388.95. The tax bills for the city of Paterson show a state school, county and city tax for

1892 as against each taxpayer, in one item, and the taxes are thus collected in that city.

Objection was made to the joinder of the comptroller and treasurer of the city of Paterson with the mayor and aldermen. In view of the sections of the city charter heretofore referred to, requiring the action of the comptroller and treasurer, as part of the municipal machinery for conveying into the hands of the county collector the moneys due by the city for state and county purposes, these officers are properly joined as defendants in order to give the county a complete remedy to collect the state and county taxes from the city.

A peremptory *mandamus* is allowed in the first instance where the legal right is clear, where the facts are not in dispute, and the matter is of public and urgent interest. *Hugg* v. *Camden*, 10 *Vroom* 620. This case comes within this rule. Let a peremptory *mandamus* issue. The writ may be so framed as to command each defendant to perform the duty specifically devolving on such defendant, or, if any embarrassment arises by the use of one writ, separate writs may issue against each defendant, specifying the particular duty enjoined on each defendant.