JOHN B. KEENAN, SUPERINTENDENT OF ELECTIONS OF
ESSEX COUNTY, AND COMMISSIONER OF REGISTRA-
TION OF ESSEX COUNTY, WITHIN THE STATE OF
NEW JERSEY, AND LESTER E. MAHR, LEGAL ASSIST-
ANT TO THE SUPERINTENDENT OF ELECTIONS AND
ADMINISTRATIVE ASSISTANT TO THE COMMIS-
SIONER OF REGISTRATION OF ESSEX COUNTY,
PLAINTIFFS, v. THE BOARD OF CHOSEN FREEHOLD-
ERS OF THE COUNTY OF ESSEX, A BODY POLITIC
OF THE STATE OF NEW JERSEY; HENRY A. PEER,
TREASURER OF SAID COUNTY, AND THE CIVIL SER-
VICE COMMISSION OF NEW JERSEY, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided March 21, 1969.

See also 101 *N. J. Super.* 495.

274

*Mr. Herman W. Kapp,* attorney for plaintiff.

*Mr. Irwin I. Kimmelman,* Essex County Counsel, argued the cause for defendants.

ANTELL, J. C. C. (temporarily assigned). Plaintiff John B. Keenan is the commissioner of registration and superintendent of elections of Essex County. In this action in lieu of prerogative writs both he and co-plaintiff, Lester E. Mahr, seek relief from certain refusals of the county treasurer and the county board of chosen freeholders to pay Mahr's salary under appointments of the commissioner of registration. The refusals are defended on the ground that the appointments are unauthorized.

A member of the New Jersey bar since 1924, Mahr was appointed counsel to the commissioner of registration and superintendent of elections of Essex County effective November 1, 1940. On or about January 16, 1944 he was appointed legal assistant to plaintiff Keenan's predecessor in office and served in that capacity until June 27, 1968. By appropriate action he was certified as eligible for civil service status and was thereafter classified by the Department of Civil Service as a permanent employee. The effective classification date is June 1, 1952.

On June 27, 1968, defendant board of chosen freeholders, by resolution No. 37, directed defendant county treasurer to discontinue salary payments to Mahr or any other person who might be appointed to the position of legal assistant in the office of commissioner of registration and superintendent of elections, and to remove Mahr's name from the county payroll. No salary payments have since been made, although

Mahr regularly reports for duty and renders services substantially the same as those prior to June 27.

For reasons set forth by this court in *Keenan v. Essex County Board of Chosen Freeholders,* 101 *N. J. Super.* 495 (*Law Div.* 1968), I conclude that the position of legal assistant to which Mahr was appointed in 1944 never enjoyed legal existence and that he may not lawfully act in such a capacity. The application for his restoration to the payroll as a legal assistant is therefore denied. There can be no judicial restoration to a position which was never legally created. *Kovalycsik v. City of Garfield,* 58 *N. J. Super.* 229, 239 (*App. Div.* 1959). It follows that the tenure provisions of the Civil Service Act are not available to Mahr since these inure solely for the benefit of those who are lawfully in the employ of a governing body. *Handlon v. Town of Belleville,* 4 *N. J.* 99, 109 (1950); *Grunewald v. Township Committee of Weehawken Tp.,* 18 *N. J. Super.* 401 (*App. Div.* 1952), certification denied 10 *N. J.* 145 (1952). One who was appointed to a nonexistent office is no better off in terms of job protection than one whose lawfully created position was abolished in good faith. In the latter situation it has been held that civil service security does not prevail. *Kraibuehler v. Civil Service Commission,* 134 *N. J. L.* 97 (*Sup. Ct.* 1946); *Scowcroft v. Civil Service Commission,* 13 *N. J. Misc.* 448, 177 *A.* 679 (*Sup. Ct.* 1935); 4 *McQuillin, Municipal Corporations* (*3rd ed.* 1968), § 12.248(*d*).

On June 28, 1968, the day following the passage of resolution No. 37, plaintiff Keenan, purporting to exercise his statutory powers, appointed Mahr to the position of administrative assistant in the office of commissioner of registration and accompanied this action by filing with defendants a "Request for Personnel Action" which described the duties of this position. Defendants again refused to meet the salary expense thereof.

Plaintiffs argue that this appointment is in all respects valid under *N. J. S. A.* 19:31–2, which, in pertinent part, provides that the commissioner of registration

"* * * shall have power to appoint on a permanent, or temporary basis, such number of persons, as in his * * * judgment may be necessary in order to carry out the provisions of this Title,"

and that under the seventh paragraph of that section the county treasurer must pay the resulting salary expense, subject only to the $655,000 budget ceiling prescribed by *N. J. S. A.* 19:32–2. Defendants answer that the appointment violates the principle applied in *Keenan v. Essex County Board of Chosen Freeholders, supra,* since the duties of the new position do not significantly vary from those performed by Mahr as legal assistant. Also, it is said that the appointment assumes sole prerogatives of the Attorney General and exceeds the commissioner's statutory power.

An understanding of the contentions is aided by the following comparison of duties contemplated by the 1968 appointment as administrative assistant with certain of those contained in the 1952 Civil Service job description for what I have held is the unauthorized position of legal assistant. The latter document has been marked in evidence.

| Legal Assistant | Administrative Assistant |
|---|---|
| Confers with the Attorney General, prosecutor's office, police departments, county clerk, county board of elections, municipal clerks and public officials concerning the conduct of elections and violations of the election law. | Confers with county board of elections, municipal clerks and public officials concerning the conduct of elections. |
| Analyzes legislation introduced affecting the election law and confers with members of the Legislature. | Analyzes pending legislation which concern this office * * * confers with members of the Legislature concerning legislation affecting the office. |
| Maintains contact with election officials in the State in order to maintain standard practices. | Maintains contact with election officials in the State in order to maintain uniform practices. |
| Prepares legislation for the office. | Performs such other duties as may be assigned to him by the commissioner of registration. |

Although certain duties, clearly of a legal nature, which he performed as a legal assistant have been omitted from the new position, the similarity of the two jobs is strikingly enhanced by Mahr's testimony that since at least 1952 approximately 95% of his working time in the commissioner's office was devoted to legislative work, "call it lobbying if you will." The remainder was occupied with legal work, and this only on election days. Since the latter services are to be discontinued, his status will now be solely that of the commissioner's legislative representative. In this capacity he is chiefly required to be present at Trenton at all times when the Legislature is in session and there attend to all pending legislation involving or touching upon Election Law policy and the interests of the citizens of Essex County, taking such action to deter or expedite passage thereof as may be suitable. At the same time he serves on retainer as the legislative representative of an unspecified number of private clients whose interests are also the subject of his attention in Trenton.

■ Although the duties of the two jobs closely coincide, and even though it is evident that nothing has really changed except the job title, this alone does not mandate the conclusion that the commissioner is merely reappointing his legal assistant in borrowed plumes. While he may have done lobbying as a legal assistant it does not follow that lobbying can be done only by a legal assistant. Legal training and experience are useful adjuncts to lobbying work, but they are not required and the field is open to non-lawyers.

■ Nor is the appointment vitiated by *N. J. S. A.* 52:17A-4(e), which designates the Attorney General as the sole legal adviser for all state officers and reserves exclusively to that official the right and obligation to "interpret all statutes" for their guidance. Perhaps, as the county counsel reasons, "interpretation" is necessarily intrinsic to the "analysis of pending legislation," but this brings the duties of the proposed appointment into fatal collision with the statute only if the word "interpret" is intended to encompass

every level and variety of interpretation. In a broad sense, verbal symbols always require a process of interpretation. In and of themselves words embrace only the most generalized of meanings, and it is only when they are examined in terms of context and situational referents — *i. e.*, interpreted — that they acquire meaningful identity. *Carroll, Language and Thought* pp. 41–42 (1964) ; *Hayakawa, Language in Thought and Action* pp. 61–62 (1949) ; *Ogden & Richards, The Meaning of Meaning* (*rev. ed.* 1956) ; 2 *Sutherland, Statutes and Statutory Construction* (*3rd ed. Horack,* 1943), § 4504, *pp.* 319–320 ; 9 *Wigmore, Evidence* (*3rd ed.* 1940), § 2470(3), *p.* 227.

If read literally to preempt to the Attorney General the right of interpretation in its broadest meaning, as county counsel urges we do, the foregoing statute would effectively immobilize the operation of every state office. Charged as they are with responsibility for administering multitudes of statutory directives, even their most routine functions, no matter how plainly prescribed by the Legislature, would have to be deferred pending formal determinations by the Attorney General. I do not read this statute to have intended so awkward a result. See *State v. Gill,* 47 *N. J.* 441, 444 (1966). Statutes should be read sensibly so as to be consistent with reason and good discretion, *Schierstead v. City of Brigantine,* 29 *N. J.* 220, 230 (1959), and it is often true that the surest way to misconstrue a statute is to read it literally. *N. J. State Board of Architects v. Armstrong,* 89 *N. J. Super.* 358, 360 (*App. Div.* 1965). The more reasonable understanding of the statutory language is that the Attorney General shall "interpret all statutes" where, at the very least, the functional meaning of a law is so uncertain that the legislative intent can be achieved only by the application of professional skills and disciplines for the construction and interpretation of statutes. Since such techniques are inapplicable to statutes which are plain and unambiguous, *Watt v. Mayor, etc., of Franklin,* 21 *N. J.* 274, 277 (1956), and bearing in mind that words and phrases in a statute are

ordinarily to be given their generally accepted meaning, according to the approved usage of the language, *N. J. S. A.* 1:1–1, I conclude that the analysis of pending legislative measures does not necessarily encroach upon the prerogatives of the Attorney General. Clearly, there is an area of discretion here within which the commissioner is free to make choices, to draw lines, to decide when legal guidance is needed for the interpretation of a statute, and I will not assume that he will disregard his obligation to seek counsel from the Attorney General where circumstances fairly warrant. His good faith is to be presumed. *N. J. Highway Authority v. Currie*, 35 *N. J. Super.* 525, 532 (*App. Div.* 1955).

A somewhat analogous question was posed in *Commonwealth ex rel. Woodruff v. Lewis*, 282 *Pa.* 306, 127 *A.* 828 (*Sup. Ct.* 1925). A number of state agencies had requested that the Auditor General make payment to certain of their claimed creditors. He refused on the ground that payment was not due. He also refused to submit the validity of the claims to the Attorney General, notwithstanding a statute requiring all state agencies and officials to request his advice when "any legal difficulty or dispute arises * * *." In an action by the Attorney General to compel submission of the question to him, the court held that it would be an unreasonable interpretation of the statute to require the Auditor General to submit "every question of law which arises in the ordinary transaction of the duties of the office," but that such action should be taken (1) where administrative questions of a legal nature arise affecting the harmony between state agencies; (2) where doubtful legal questions are presented which had not been previously passed upon which affect a state officer's performance of official duties, and (3) in situations likely to result in litigation in which the state is interested. (at *p.* 832). To the extent that it rejects a rigid and literal reading of this kind of statute, the opinion furnishes support for the result reached here.

██ The narrow question to be decided is whether defendant county treasurer is required, under the seventh paragraph of *N. J. S. A.* 19:31–2, to pay Mahr's salary as administrative assistant in the job described, as part of the "necessary expenses incurred" in the management of the commissioner's office. If this appointment is authorized by the statute, then the salary becomes part of the necessary expenses. In resolving the question I note again that the third paragraph of that section authorizes the commissioner to appoint "such *number* of persons, as in his * * * judgment may be necessary in order to carry out the provisions of this Title" (emphasis ours). The prepositional phrase "as in his * * * judgment" modifies "such number of persons." Therefore, the commissioner appears to be vested with unlimited discretion as to the unit number of persons he may appoint. But he is not given comparable authority as to the purpose for which the appointments may be made. As to this, an objective, though flexible, standard is provided, *i. e.*, "may be necessary in order to carry out the provisions of this Title," and he may make appointments for this purpose only. In connection with the provisions of *Title* 19, the duties of the commissioner appear to be entirely administrative, investigative and ministerial in nature. See the partial synopsis in *Keenan v. Essex County Board of Chosen Freeholders, supra,* at *pp.* 499–500. While some degree of discretion is naturally implicit in formulating job assignments, it is inconceivable how the services of a legislative representative in the state capitol may be necessary for this state official to carry out such duties. For this reason I conclude that the appointment falls outside the commissioner's defined appointive powers and is therefore unauthorized.

██ Even if the statute expressly left to the commissioner's "judgment" what services are necessary for this purpose, this would still not imply unlimited discretion; it would still be circumscribed by its stated purpose of carrying

out the provisions of *Title* 19, and appointments made thereunder would still be required to have at least a rational bearing upon the provisions to be carried out. The official conduct of a public officer may not overflow the reasonable limits of his legal discretion. *Driscoll v. Burlington-Bristol Bridge Co.,* 8 *N. J.* 433, 474–475 (1952) ; 3 *Am. Jur., Public Officers,* § 291, *p.* 101. Where, as here, it unmistakably appears that even the most vigorous and imaginative theorizing cannot relate, even colorably, the proposed services in any way to any of the statutory provisions to be carried out, I would conclude that the commissioner had wrongly measured the remotest limits of the supposed discretion and that the salary attendant upon such an appointment could form no part of the "necessary expenses" which must be paid by the county treasurer.

But plaintiffs maintain that the necessity of the services to be rendered is not a question which under any circumstances may be open to consideration in this forum; that *N. J. S. A.* 19 :31–2 plainly ordains that "all necessary expenses incurred, *as and when* certified and approved by the commissioner of registration * * * shall be paid by the county treasurer of the county" (emphasis ours) ; that the necessary certification has here been submitted by the commissioner, and that there is no power on the part of defendants to look behind the certification to determine the necessity of the expenses or the propriety with which the commissioner exercised his discretionary powers.

■ Statutory provisions of this kind, whereby an agency is authorized to requisition operating revenue to be appropriated by a municipal or county governing body without any corresponding responsibility on the part of the agency to the latter, are not uncommon. Under such arrangements it is settled that the appropriating body is not empowered to review and modify to its satisfaction the budgetary certifications of the requisitioning agency. It has a mandatory duty to provide the moneys requested. *Nolan v. Fitzpatrick,* 9 *N. J.* 477, 482–483 (1952) ; *Grosso v. City of Paterson,* 33

*N. J.* 477, 481 (1960). The rule is particularly apposite where, as here, the Legislature obviously intended to confide to the requisitioning agency "large and unusual determinative powers," *Barringer v. Miele,* 6 *N. J.* 139, 143 (1951), "to prevent the offices of the superintendent of elections and the commissioner of registration from being financially crippled by an unsympathetic or a hostile board." *Sewell v. Board of Chosen Freeholders of Hudson County,* 126 *N. J. L.* 186, 189 (*Sup. Ct.* 1941); *MacPhail v. Board of Chosen Freeholders,* 6 *N. J. Super.* 613, 618 (*Law Div.* 1950).

But this does not mean that the commissioner's certification of necessary expenses is totally inviolate. In *Nolan v. Fitzpatrick, supra,* the Boulevard Commissioners of Hudson County requisitioned operating funds under a statute which directed that the board of chosen freeholders shall thereupon provide the money for the use of the commissioners and that the board "shall have no control over the fund." One question raised by the board of chosen freeholders, in an action brought to compel payment, concerned the legality of certain budgeted expenditures in the requisition. The issue was evidently raised for the first time on appeal and thus was not adjudicated by the Supreme Court. However, Chief Justice Vanderbilt noted, 9 *N. J.,* at *page* 484, that the legality of the expenditures presented "questions of law which can be settled only by appropriate legal proceedings," recognizing that the legality of the expenditures may indeed be questioned, albeit "only by appropriate legal proceedings"; and it was pointed out that the board of chosen freeholders could attack the annual requisition directly by an action in the courts. But, as the late Chief Justice carefully observed in the same paragraph, this does not give the board "power to take the law into its own hands, for to do so would defeat the clear legislative intent."

We are dealing, therefore, with a legislative policy clearly intent on guarding against any curtailment in the operation of the commissioner's office by an interruption of funds — even at the risk of instances where some public moneys may

be irregularly disbursed until court determination as to the legality thereof is secured. The demands of procedural correctness here required the county to perform its unequivocal duty to pay the certified necessary expenses and thereafter seek its revisions or deletions in an independently instituted action. However, plaintiffs have not requested an adjudication in their favor on this ground. The matter has been fully briefed and argued and submitted almost entirely on facts which were either stipulated or undisputed. At no time was interlocutory relief, in the form of summary judgment or an order striking defenses, sought by plaintiffs, and although the case was pretried in October 1968, the plenary hearing was deferred until mid-February 1969 at their instance. I am of the view that no useful purpose can now be advanced by disposing of the matter on adjective grounds and awaiting a re-presentation of the meritorious issues, which are of public importance, in another proceeding to be brought by defendants. However, the parties should be placed as nearly as possible in the position they would have occupied had the proper procedural steps been followed.

Since, as I have said, the commissioner was unconditionally entitled to have the salaries of his appointees paid pending judicial determination to the contrary, and since it is not disputed that Mahr has been regularly serving the commissioner since the date of his severance from the payroll, I will adjudge that payment be made to him for all salary accruing during the interval between June 28, 1968 and the date of this opinion, but not thereafter.

Mahr also seeks to have the doctrine of equitable estoppel applied against the county to bar it from repudiating its course of conduct over the years in paying his salary. He bases this application upon the fact that he rejected retainers over the years from prospective private clients as a legislative representative because his position with the county often left him with insufficient time to care for the requirements of new accounts.

*Feldman v. Urban Commercial, Inc.,* 70 *N. J. Super.* 463, (*Ch. Div.* 1961), sets forth the following essential elements of an equitable estoppel:

"(1) there must be conduct — acts, language, or silence — amounting to a representation or a concealment of material facts; (2) these facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him; (3) the truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when such conduct was done, *and at the time when it was acted upon by him;* (4) the conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon; (5) *the conduct must be relied upon by the other party,* and, thus relying, he must be led to act upon it; (6) he must in fact act upon it in such a manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party's being permitted to repudiate his conduct and assert rights inconsistent with it." (Emphasis added, at *pp.* 474–475)

See also *Clark v. Judge,* 84 *N. J. Super.* 35, 54 (*Ch. Div.* 1964), affirmed 44 *N. J.* 550 (1965).

██ Doctrines of estoppel are not applied against the State and its counties to the same extent as they are against individuals and private corporations. *City of Bayonne v. Murphy & Perrett Co.,* 7 *N. J.* 298, 311 (1951); see also *Adler v. Dept. of Parks and Public Property, Irvington,* 20 *N. J. Super.* 240, 243 (*App. Div.* 1952).

██ Here there was no misrepresentation or concealment of material fact. Indeed, all the facts of the matter were at least as well known to Mahr as by defendants. He complains only that over a period of years the county wrongly paid his salary while he held a legally nonexistent job. It was at all times open to him to examine the lawfulness of the county's action in this respect and make his own assessment with respect thereto. Having failed to do so, he acted at his peril in anticipating that he could not be lawfully removed from the position. *E. g., V. F. Zahodiakin Engineer-*

*ing Corp. v. Zoning Board of Adjustment of City of Summit,*
8 *N. J.* 386, 396 (1952). Nor do I find that the fourth
requisite has been shown. There is no evidence to suggest
that the county should have reasonably foreseen that by
paying his salary for this unique employment Mahr would
be induced to limit his private clientele. Under the circum-
stances the doctrine of equitable estoppel does not apply.