143 N.J. Super. 259 (1976)
362 A.2d 1270
BOARD OF EDUCATION OF THE BOROUGH OF FAIR LAWN, A PUBLIC CORPORATE BODY OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
MAYOR AND COUNCIL OF THE BOROUGH OF FAIR LAWN, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided June 15, 1976.
*263 Mr. Reginald F. Hopkinson for plaintiff (Messrs. Jeffer, Walter, Tierney, DeKorte, Hopkinson & Vogel, attorneys).
Mr. Jack Ballan for defendant.
PRESSLER, J.C.C., Temporarily Assigned.
Plaintiff Board of Education of the Borough of Fair Lawn (board), brought this declaratory judgment action seeking a definition of the obligation of defendant Mayor and Council of the Borough of Fair Lawn (borough) to pay over school moneys pursuant to N.J.S.A. 54:4-75. That statute, which governs the payment by all municipalities to their respective school districts of local taxes raised for public school support, has apparently not heretofore been the subject of any judicial construction. It provides in full as follows:
The governing body of each municipality shall pay over to the custodian of school moneys, in the case of school districts in which appropriations for school purposes are made by the inhabitants of the school district, within forty days after the beginning of the school year, twenty per centum (20%) of the appropriation for local school purposes, and thereafter, but prior to the last day of the school year, the balance of the moneys raised in the municipality for school purposes in such amounts as may from time to time be requested by the Board of Education, within thirty days after each request. The Board of Education shall not request any more money at any one time than shall be required for its expenditures for a period of eight weeks in advance; provided, however, that the Board of Education may at any time, but not earlier than fifteen days prior to the beginning of the school year, request sufficient moneys to meet all interest and debt redemption charges maturing during the first forty days of the school year. The governing body may make payments of such moneys in advance of the time and in excess of the amounts required by this section.
The specific question posed by this controversy is the extent to which, if any, the governing body may compel a board of education to submit to it detailed financial justification in support of its periodic payment request and the extent to which, if any, the governing body may refuse to honor *264 a periodic payment request either because the board of education refuses to respond to the governing body's demand for supporting information or because the governing body is not satisfied on either a quantitative or substantive basis with the information which is supplied.
The controversy here arose as a result of the refusal by the governing body of Fair Lawn to pay over to the board its anticipated payment in February 1976. The board thereupon commenced this action by verified complaint and order to show cause by which it sought, by way of interim relief, an order compelling the borough to make the February payment forthwith and directing the borough to honor its periodic requests until final disposition of this litigation. That relief was granted in order to insure the uninterrupted and orderly operation of the public school system pending final judgment.
With respect to the substantive question here raised, it is a matter of undisputed fact that the parties have been following for nearly 20 years a uniform and consistent practice in respect of school-money payments which varies somewhat from the basic statutory scheme. That scheme, as explicitly provided for by the quoted statute, mandates a payment by the municipality to the board of 20% of the local school appropriation within 40 days after commencement of the school year, that is, by August 10, the school year running from July 1 to the following June 30. No board request for that payment is required. Thereafter, the board must make periodic requests at least 30 days in advance of the desired payment date, the amount requested not to exceed more than it requires for its expenditures for the eight-week period following the payment date. Any remaining balance is required to be paid over to the board prior to the end of the school year. The governing body is, moreover, authorized to pay over school moneys in its discretion in advance of the time and in excess of the amounts required by the basic *265 scheme.[1] The payment method actually followed by the parties here was for the board, in effect, to waive the initial 20% payment and to submit to the borough six requisitions during the school year, the first at least 30 days prior to its commencement and bimonthly thereafter, each in the amount of approximately one-sixth of the annual appropriation. The borough, instead of making such bimonthly payments, however, made 12 monthly payments, each in the amount of one-half of the requisition. Thus the borough, rather than paying the requested amounts within 30 days of the requisition, as provided by statute, paid one-half of the requisition within 30 days and the other half within 60 days. Following this procedure, the board submitted a requisition in December 1975 for some $1.7 million, representing approximately one-sixth of the total of $10.26 million appropriation for the 1975-1976 school year. One-half of that appropriation, some $850,000, was paid by the borough in January. The refusal by the Borough to pay the second half of the requisition in February represented the culmination of a series of communications by the borough to the board during the fall of 1975 in which the Borough expressed dissatisfaction with this payment method and its intention to monitor closely the board's financial status by withholding whatever portion of the requisitioned sum the borough would determine that the board did not need for the ensuing eight-week period.
On the return date of the order to show cause the borough sought an opportunity to prove, by way of a plenary hearing, that the board did not actually need the full February payment in order to meet its expenditures for the next four weeks, and hence that its refusal to honor the requisition in full was justified.[2] The borough has never taken the position *266 that the board is making illegal or improper expenditures or is in any other way mismanaging school funds. Nor does it suggest that it is itself without the available funds to meet the requisition. Its actions here were apparently inspired by its belief that, before it could be compelled to make the statutorily mandated payments, the board would have to exhaust or at least invade its other financial resources  specifically, its certificates of deposit which represent prior budgeted and current surplus. Since the borough's funds are also, of course, invested in certificates of deposit, it is evident that this dispute is actually motivated simply by the desire of the borough to compel the board rather than itself to forego the earning of interest on unexpended school money.
The position taken by the borough raises initially the threshold question as to whether or not a governing body has any right, as a matter of law, to reject for any reason a board's requisition which is facially valid. If it does not, as this court concludes for the reasons herein stated, then the board is clearly entitled forthwith to the ultimate relief here sought, namely an adjudication that the borough has no right to look behind a facially valid request, as hereinafter defined, and that it must comply with the minimum pay-over schedule mandated by the statute.[3]
*267 The borough's assertion of a right to review and inquire into the board's requisition and the corollary right to withhold a payment where the requisition is facially adequate is based on what this court conceives to be a fundamental misunderstanding of the legislatively-designed financial relationship between those autonomous local governmental entities which have the power to tax and those which do not. An appreciation of the structure of that relationship requires the initial recognition that the tax structure of this State historically and at present rests heavily, and burdensomely so, on local real property taxes, assessable and collectible only by municipalities. But it is not only the cost of operation of municipal government which depends on that tax base. County governments and school districts, wholly autonomous units with autonomous areas of governmental responsibility and autonomous budgets but without any independent or direct taxing power, are hardly less dependent on local property taxes.[4] It is and has historically been the legislative policy of the State to provide that the revenue requirements of counties and school districts, as reflected in their annual budgets, adopted, approved and certified in accordance with applicable law, be proportionately allocated *268 among the municipalities comprising those respective units for purposes of collection and transmission. See, generally, N.J.S.A. 18A:22-23 (school districts) and N.J.S.A. 54:4-41 (counties). Thus the municipal budget upon which the annual real property tax rate is based has three distinct components: the amount to be raised for municipal purposes, the amount to be raised for county purposes, and the amount to be raised for school purposes. See, e.g., N.J.S.A. 40A:4-12 and 13. As to the county and school moneys to be thus raised, it is an essential part of the overall scheme that the obligation of the municipality to include these sums in their budgets, to collect them, and to transmit them in accordance with statutory directive, is absolute and unqualified. These funds, moreover, once collected, are in practical effect trust funds until transmitted to the county pursuant to N.J.S.A. 54:4-74 and to the school district pursuant to N.J.S.A. 54:4-75. The municipality is in essence merely the collection agent for the county and the school district of these funds as to which its relationship is basically custodial.
Thus the mandate of N.J.S.A. 54:4-76 requiring that "the governing body of the municipality * * * shall cause the county, local school and State taxes to be paid as and when due for payment," both in present form and as expressed in predecessor legislation, has been uniformly construed as imposing a duty admitting neither of any exercise of discretion nor of any failure of compliance by municipal officials for any reason. See, e.g., Booth v. Parnell, 12 N.J. Misc. 413, 172 A. 50 (Sup. Ct. 1934). That duty, by way of underscoring of its unconditional character, has been variously described as "ministerial only," "inflexible," "imperative," "unqualified," "conclusive" and "unequivocal." See, generally, so holding in respect of predecessor legislation relating to school district payments by municipalities, State, Herder, Collector of Amwell v. Collector of Hunterdon, 36 N.J.L. 363 (Sup. Ct. 1873), Elizabeth Bd. of Ed. v. Sheridan, 42 N.J.L. 64 (Sup. Ct 1880); Shields v Paterson, 55 N.J.L. 495 (Sup. Ct. 1893); Board of Education v. Union, *269 52 N.J.L. 69 (Sup. Ct. 1889); Woolley v. Hendrickson, Collector, 73 N.J.L. 14 (Sup. Ct. 1905); And see, so holding in respect of county payments by municipalities, Shields v. Paterson, supra; Ross v. Walton, 63 N.J.L. 435 (Sup. Ct. 1899), aff'd o.b. 67 N.J.L. 688 (E. & A. 1902); Coe, Collector, v. Englewood, 68 N.J.L. 559 (Sup. Ct. 1902); Freeholders of Atlantic v Weymouth, 68 N.J.L. 652 (E. & A. 1903); Trewin v. Shurts, 74 N.J.L. 200 (Sup. Ct. 1907); Tipping v. Dougherty, 11 N.J. Misc. 931, 169 A. 671 (Sup. Ct. 1933). And see, similarly holding in respect of other governmental units whose budgets are not subject to review and approval by the funding unit, Nolan v. Fitzpatrick, 9 N.J. 477 (1952) (Hudson County Boulevard Commission pursuant to N.J.S.A. 27:17-7); Keenan v. Essex County Bd. of Chosen Freeholders, 105 N.J. Super. 271 (Law Div. 1969) (commissioner of registration and superintendent of elections pursuant to N.J.S.A. 19:31-2); Downs v. Boonton, 99 N.J.L. 40 (Sup. Ct. 1923) (county library pursuant to L. 1920, c. 122). And compare, Grosso v. Paterson, 33 N.J. 477 (1960), in respect of local boards of health. As aptly and most recently summarized in Keenan v. Essex Cty. Bd. of Chosen Freeholders, supra:
Statutory provisions of this kind, whereby an agency is authorized to requisition operating revenue to be appropriated by a municipal or county governing body without any corresponding responsibility on the part of the agency to the latter, are not uncommon. Under such arrangements it is settled that the appropriating body is not empowered to review and modify to its satisfaction the budgetary certifications of the requisitioning agency. It has a mandatory duty to provide the moneys requested. * * * The rule is particularly apposite where, as here, the Legislature obviously intended to confide to the requisitioning agency "large and unusual determinative powers," * * *. [105 N.J. Super. at 282-283]
The policy considerations underlying the absolute payment duty by municipalities to school districts were succinctly articulated in the context of predecessor legislation more than a hundred years ago in a statement which is of *270 equal force today, namely, that the attempted exercise of municipal discretion in the turnover of public school money would "tend to obstruct and hinder the transmission and proper distribution of the public school moneys, and would be sure to introduce utter confusion in the administration of this cherished fund." State, Herder, Collector of Amwell v. Collector of Hunterdon, supra, 36 N.J.L. at 367. And compare, Keenan v. Essex County Bd. of Chosen Freeholders, supra, 105 N.J. Super. at 283. An exercise of the review and withholding right sought by the borough here would inevitably result in a serious potential for grievous interference with a continuous and efficient school operation and for the creation of intolerable crisis and chaos throughout the school year. The school districts are now, perhaps more than ever, beset with serious and legitimate financial, administrative and personnel problems. They clearly ought to be protected from gratuitous and officious intrusions by municipal governing bodies attempting to act beyond their stated authority.
There are, of course, other considerations dictating the result here reached. The financial operations of a school district are subject to intense public review and administrative control. The budget of a Type II school district, such as that involved here, is submitted to the voters for approval after public hearing before the board of education. The budget of a Type I school district is voted upon by the municipal governing body, upon certification to it by the board of school estimate, and after public hearing both by the governing body and the board of school estimate. See generally, N.J.S.A. 18A:22-1 et seq. The budget's preparation and implementation after adoption are subject to strict review and control by the State Board of Education. See, e.g., N.J.S.A. 18A:4-14, prescribing the mandatory use by all school districts of the State Board's bookkeeping system. See also, N.J.A.C. 6:20-2.1 to 2.11, promulgated by the State Board pursuant to N.J.S.A. 18A:4-15, and prescribing accounting procedures and requirements. And see, the audit requirements *271 of N.J.S.A. 18A:23-1 et seq. The State Board of Education has, moreover, pursuant to N.J.S.A. 18A:4-14 and through its Division of Administration and Finance, prepared and distributed various manuals containing directives to the local school districts in respect of the conduct of their financial affairs and requiring the use of specified forms for various financial procedures. Among these publications is a detailed manual (undated) entitled "Directives for Using New Jersey Public School Financial System." Paragraphs 49 to 54, inclusive, of that manual deal with the board's responsibility in respect of N.J.S.A. 54:4-75 and direct, among other things, that the board make its requisition to the municipality by way of prescribed forms, denominated T-I and T-II, the latter being used for debt service requisition only. These are, in fact, the forms of requisition used here by the board. T-I consists of a form of certification of board resolution fixing the amount required for the next eight weeks, exclusive of debt service. It also calls for the following additional information only: amount of district tax voted exclusive of debt service, amount received by the board to date, amount of the request, and the balance to the credit of the board remaining in the municipality's hands after payment of the request. There has not been any serious suggestion by the borough that either the form of certification of resolution comprising part of T-I was facially defective or that any of the information requested by the form was omitted or incorrect, or that the amount of the requisition was inconsistent with the general parameters of the board's budget. The requisition, therefore, in general accord with N.J.S.A. 54:4-75 and in specific compliance with the prescription of the Commissioner of Education, was clearly facially adequate.
Since the borough concedes that it has no choice but to transmit the entire remaining balance of the full appropriation by the end of the school year, what is primarily in dispute is the question of timing and the extent of the board's power to itself determine timing by its use of the requisition *272 mechanism. In this respect N.J.S.A. 54:4-75 varies from the companion statute, N.J.S.A. 54:4-74, which governs turnover of county funds. The county statute does not contemplate a requisition basis of payment. The municipality is simply obliged to make four equal installment payments to the county treasurer, each on the fifteenth day of the month in which municipal taxes are required to be paid, namely, February, May, August and November. See N.J.S.A. 54:4-66(a). There appears nothing in the legislative history of these two enactments, part of the same piece of original legislation, L. 1918, c. 236, to account for this difference. It would, however, be thoroughly inconsistent with legislative policy, as expressed in the current tax structure, to construe the requisition mechanism of the schoolmoney statute as imposing a lesser obligation of payment on the municipality by permitting it to exercise its discretion in order to reduce the amount of or to prolong the time for a requested periodic payment. The eight-week expenditure restriction on requisitioning is, moreover, not absolute, the municipality having the option to turn over greater amounts and at more frequent intervals than the minimum statutory scheme requires. This court, therefore, construes the import of the eight-week limitation as imposing a restriction upon the board which is not monitorable by the municipality by way of any mechanism which would result in a late or a reduced payment of a requisition which, if facially adequate as heretofore defined, is conclusively binding on the municipality for purposes of N.J.S.A. 54:4-75.[5]
*273 Nor does this court construe the meaning of the phrase "money * * * required for its expenditures," as used in N.J.S.A. 54:4-75, as denoting anything other than that which the board projects it will have to spend, namely, an amount not reducible by deposit income or surplus funds which may be in its possession or to its direct credit. There is no question, of course, that the board will have to account for these funds and any investment income it may earn in planning its budget for the ensuing year. There is also, of course, no question that the board has the right, if not indeed the obligation, to invest those funds until required for disbursement in interest-bearing certificates of deposit. See N.J.S.A. 17:9-9, N.J.S.A. 17:12B-241, N.J.S.A. 40: 5-7.1 It is also clear that the board has the right, subject to ultimate review by the Commissioner of Education, to maintain a reasonable surplus in order to meet unforeseen contingencies See Penns Grove-Upper Penns Neck Reg'l School Dist. Bd. of Ed. v. Penns Grove Mayor and Council, etc., 1971 School Law Decisions 372; City of East Orange Bd. of Ed. v. East Orange Mayor and Council, 1976 School Law Decisions ____ (March 26, 1976). Patently, the whole purpose of the board's maintenance of a surplus would be defeated if it were required to be expended for regularly budgeted and appropriated purposes. It is thus clear that surplus funds, not being legally available for regular budgeted expenses, could hardly be compelled by the municipality to be used to offset anticipated regular expenditures for purposes of the N.J.S.A. 54:4-75 requisition. Furthermore, since surplus funds are not usable until a proper contingency *274 arises, the dictating financial practicality is for contingent funds to be invested until actually required, thus assuring the greatest possible investment income, a consequence obviously serving the taxpayer's interest. That benefit would be lost to the taxpayers were the board required, for purposes of each requisition, to cash in its certificates of deposit in order to apply interest against anticipated expenditures.
It is apparent that the real nature of the controversy here is political rather than legal. The borough may well believe that the board is maintaining an excessive surplus which is resulting in an unnecessary burden upon the tax rate for which it ultimately, in the political sense, bears the burden. But its recourse cannot be either by way of withholding requisitioned funds or otherwise appealing to the court for relief. Its recourse must be confined to what is essentially the political process, that is, seeking appropriate information and justification and exchange of views at board budget hearings and by direct appeal to the voters. In a Type I district the governing body might have the further recourse of declining to approve the budget if it believed the budgeted surplus to be excessive.
The court does not suggest that a governing body is without legal remedy if it genuinely believes that the school district is engaging in illegal or improper financial practices. But its option to seek relief in that situation, either by bringing the matter to the Commissioner of Education if the school laws are directly involved, or by appropriate court action if they are not, does not relieve it from its independent obligation to honor a proper requisition. See Nolan v. Fitzpatrick and Keenan v. Essex Cty. Bd. of Chosen Freeholders, supra.
In summary, the court holds that submission by the board of a facially adequate requisition on a form prescribed by the Commissioner of Education requesting an amount generally consistent with the school district's appropriated expenditures is conclusively binding upon the *275 borough for purposes of meeting its mandatory obligations pursuant to N.J.S.A. 54:4-75. The court further holds that the requisitioned payment cannot be reduced by the borough in order to compel the board either to invade its surplus or to cash in its certificates of deposit. The court holds, furthermore, that the borough must make the 20% intial payment to the board without special "need" requisition no later than August 10 of each year and that the board may, in its discretion, submit its first periodic requisition pursuant to the statute at any time after August 10. Finally, this court holds that the board is entitled to the full amount of its requisition, not half of it, within 30 days following its submission.
NOTES
[1] The statute also, by 1952 amendment, makes special provision for the board's debt service payment, a matter not here in direct dispute.
[2] The borough did, in fact, just prior to the hearing, pay over to the board $550,000, some $300,000 less than the requisitioned sum.
[3] As a procedural matter, the parties were afforded the opportunity to brief and argue that threshold question by way of a motion by the board for summary judgment. It should further be noted that the possibility of a second threshold question was considered by the parties, namely, whether or not their controversy was a school dispute within the intendment of N.J.S.A. 18A:6-9 and hence within the initial adjudicatory jurisdiction of the Commissioner of Education. It appears, however, that "school law" disputes in that context are limited to those arising under Title 18, and this one, of course, arises under Title 54. See, e.g., E. Brunswick Tp. Bd. of Ed. v. E. Brunswick Tp. Council, 48 N.J. 94, 102-103 (1966). The court, nevertheless, in view of the Commissioner's probable concern and expertise in respect of the issue here raised, directed the parties to notify him of the pendency of the action and to solicit both his view of his adjudicatory jurisdiction over this controversy and his participation in this action. The letter response by the Attorney General's office to this notification included the advisory that after consultation by that office with the staffs of the Department of Education and the Division of Local Government Services, "the State has concluded that the interpretation of application of a tax statute, N.J.S.A. 54:4-75 are not matters within the Commissioner of Education's special expertise, and therefore respectfully declines to intervene herein."
[4] It would seem clear that despite any eventual restructuring of public school financing in accordance with the dictates of Robinson v. Cahill, 62 N.J. 473 (1973), the cost of school operation will continue to be substantially contributed to by the local property tax base as long as that base continues viable as at least one of the tax-raising mechanisms. No school refinancing plan yet proposed in this State has, in fact, contemplated complete elimination of the property tax contribution. See, Public School Education Act of 1975, N.J.S.A. 18A:7A-1 et seq., and more particularly, N.J.S.A. 18A:7A-2(7).
[5] The letter from the Attorney General's office heretofore referred to also advised as follows:

The Department of Education has asked this office to advise the court that in view of the occasional practical problems arising out of the transfer of funds pursuant to N.J.S.A. 54:4-75, the Department's Division of Administration and Finance anticipates providing more detailed administrative guidelines at some time in the future. Among the approaches under consideration is the use of forms containing greater detail about a district's financial needs than the requisition forms now in use.
This advisory is construed by this court as indicating the view of the Department of Education that board use of its current prescribed requisition forms is sufficient to compel municipal compliance pursuant to N.J.S.A. 54:4-75.
Note should further be taken that the annual state aid to school districts mandated by N.J.S.A. 18A:7A-1 et seq. is required to be paid on warrant in ten equal monthly installments commencing on September 1 of each year. See N.J.S.A. 18A:7A-26.